674 P.2d 533
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Ivan CORDOVA, Defendant-Appellant.**

**No. 7166.**

Court of Appeals of New Mexico.

Dec. 6, 1983.

Paul Bardacke, Atty. Gen., Carol Vigil, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Edward Myers, Marchiondo & Berry, P.A., Albuquerque, for defendant-appellant.

## OPINION

LOPEZ, Judge.

The defendant appeals from a conviction of aggravated battery, NMSA 1978, § 30-3-5(C). We affirm and remand for modification of the sentence.

Defendant presents three issues on appeal. Issue I: Whether the trial court impermissibly eliminated defendant's use of the victim's deposition during trial; Issue II: Whether the cumulative effect of prosecutorial misconduct denied defendant a fair trial; Issue III: Whether the imposition of a harsher penalty following a successful appeal violated defendant's due process rights.

Issues that were presented in the docketing statement but not briefed are aban-

doned. *State v. McGill,* 89 N.M. 631, 556 P.2d 39 (Ct.App.1976).

This is defendant's second trial on the charge. His first conviction was reversed by this Court in *State v. Cordova,* Ct.App. No. 5610 (memorandum opinion filed 7/6/82) on grounds of prosecutorial misconduct.

FACTS:

Defendant's conviction arose out of a fight at the El Bruno bar in Cuba. Valdez, the victim, testified that he and his wife were visiting relatives in New Mexico. They stopped for the night in Cuba and went out for some drinks where Valdez played pool with defendant. After words were exchanged between Valdez and Roger Vallejos, defendant's friend, defendant took a swing at Valdez. After a short fist fight outside the bar, Valdez picked the defendant off the ground, shoved him toward his pick-up, and declared he did not want any more trouble. Defendant got in his pick-up and rammed it into Valdez, causing Valdez to suffer a broken left leg and torn ligaments in his right knee.

Defendant's version of the fight sharply conflicts with the victim's story. He testified that he played pool with Valdez, and then saw Valdez and Vallejos arguing. When defendant and Vallejos were leaving the bar, Valdez grabbed him from behind by his hair and began punching him and kneeing him in the face. Defendant was trying to get away. He grabbed Valdez's left leg and they both fell down. Valdez's legs hit the asphalt at the door. Valdez let go of his hair and defendant got into his truck and left to take Vallejos home.

Linda Valdez corroborated her husband's story, except that she did not actually see the truck hit her husband. She only saw the fist fight. Roger Vallejos corroborated defendant's story.

**ISSUE I: Whether the trial court impermissibly eliminated the defendant's use of the victim's deposition during trial.**

The victim had instituted civil proceedings against the defendant, defendant's counsel had deposed the victim for purposes of that suit. The matter of the deposition arose during the hearing on the State's motion *in limine* to exclude evidence of the victim's 1964 simple assault conviction. The court granted the motion because the charge was too old to come in under NMSA 1978, Evid.R. 609 and because there would be no dispute at trial that the fight occurred. At that time, defendant wanted the deposition to be admitted for several reasons: 1) to impeach the victim with the charge; 2) to impeach the victim by showing that in the deposition, the victim admitted that he had had lied on a liquor license application in Colorado; and 3) to demonstrate the victim's "streak of violence" by the victim's admission in the deposition that he was angry at the defendant when the fight occurred. For these purposes, the defendant cited NMSA 1978, Evid.R. 404(b), 405(b), 609, and also suggested that the statements could qualify as "prior inconsistent admissions."

The issue on appeal is not the propriety of the State's motion *in limine* but whether the deposition of the victim could be used when his wife was being cross-examined.

During cross-examination of Mrs. Valdez, defendant asked whether her husband had admitted that he gets violent from time to time. The State's objection was sustained. Defendant wanted to use the deposition to show that Mrs. Valdez was present at the deposition when her husband was asked about and admitted violence. Apparently, if she denied that her husband admitted violence, defendant could then impeach her. Defendant also argued again about the prior assault conviction and the liquor license application. The court ruled that the civil deposition could not be used at all.

Both the State and defendant premise their argument on NMSA 1978, Crim.P.R. 29(n) (Cum.Supp.1983), which states as follows:

(n) **Use of depositions.** At the trial, or at any hearing, any part or all of a deposition may be used as evidence if:

(1) the witness is unavailable, as unavailability is defined in Paragraph (a) of Rule 803 of the Rules of Evidence;

(2) the witness is [sic] gives testimony at the trial or hearing inconsistent with his deposition; or

(3) it is otherwise admissible under the Rules of Evidence.

If only part of a deposition is offered in evidence by a party, any adverse party may require him to offer any other part or parts relevant to the part offered, and any party may introduce any other parts, subject to the Rules of Evidence.

■ The rule governs the use of depositions taken for the purposes of the criminal proceeding. The taking and use of depositions must be authorized under Rule 29 and used in compliance with the rule. *State v. Berry,* 86 N.M. 138, 520 P.2d 558 (Ct.App.1974). Because the use of depositions constitutes an exception to the right of confrontation, strict compliance with Rule 29 is required. Circumstances permitting the use of depositions at trial must be exceptional. *McGuinness v. State,* 92 N.M. 441, 589 P.2d 1032 (1979).

■ The deposition in question was taken for another proceeding. Under the facts of this case we hold that the trial court correctly ruled that the civil deposition of Mr. Valdez could not be used when his wife was being cross-examined. We recognize that under certain circumstances, not applicable here, a civil deposition may be used in a criminal proceeding, e.g., for impeachment.

**ISSUE II: Whether the cumulative effect of prosecutorial misconduct denied defendant a fair trial.**

■ Defendant points to three incidents of prosecutorial misconduct. The first occurred during the cross-examination of defendant, when the prosecutor was asking about whether defendant said anything to the officer who arrested him about the incident. The defendant answered that he had told the officer about what had happened when he was being processed (booked) at the jail, but he had not said anything when he was being pulled over. Defense counsel then remarked, "That's my recollection, too." When the prosecutor objected to that

remark, defense counsel stated that the prosecutor was trying to mislead and trick the defendant, and the prosecutor said, "He's trying to suborn perjury." Defense counsel objected and asked for a mistrial.

The court put him off for a minute, asking how long the cross-examination would last. After a brief discussion about witnesses, defendant again stated for the record that he had asked for a mistrial "on account of his [the prosecutor's] improper remarks to the jury." The court replied that the record would show what had actually been said previously. Defendant agreed. The court allowed cross-examination to resume. The defendant did not pursue his motion, nor did he invoke a ruling from the trial court. The trial court's comment went to the substance of the questioning and did not address the motion for a mistrial.

We hold that the record shows *no ruling* from the trial court. Since defendant did not invoke a ruling on defendant's alleged and claimed error and the court failed to rule, we conclude that we cannot review this particular point. *See State v. Andrada,* 82 N.M. 543, 484 P.2d 763 (Ct.App.1971); *State v. Lopez,* 84 N.M. 805, 508 P.2d 1292 (1973); *State v. Sandoval,* 88 N.M. 267, 539 P.2d 1029 (Ct.App.1975).

■ The second instance of claimed prosecutorial misconduct occurred during the State's rebuttal argument. The defendant, in closing argument, commented that the prosecutor's job was to "put people away." The prosecutor responded to that statement by commenting that putting the defendant in jail had nothing to do with what was happening at the trial, and that in all likelihood, as a first offender, defendant probably would not go to jail. The defendant objected saying the remark was improper; the court commented that the remark was improper. The prosecutor replied that he thought defendant wanted to talk about it, and apologized. He also told the jury that they were not to concern themselves with the consequences of the verdict. Defendant did not ask for an admonishment or a curative instruction.

Additionally, the prosecutor's closing remarks were in response to defendant's closing remarks. They were improper, but were invited by the defendant. Under these facts, the prosecutor's comments are not grounds for reversible error. *State v. Jaramillo,* 88 N.M. 60, 537 P.2d 55 (Ct.App. 1975); *State v. Wesson,* 83 N.M. 480, 493 P.2d 965 (Ct.App.1972); *see State v. Ruffino,* 94 N.M. 500, 612 P.2d 1311 (1980).

■ The third instance of claimed prosecutorial misconduct occurred during rebuttal argument when the prosecutor commented that the defendant had only worked for a total of 14 months in various places since 1975. There was no objection. Defendant argues that it was an unfair attempt to sway the jury by implying that the defendant was a deadbeat simply because he did not have a steady job. Defendant also asserts that the prosecutor's statement is not supported by the evidence in that the defendant testified he could not recall any of the other jobs he had during that period. However, when asked whether the several jobs he had just mentioned were the jobs he held up until the time of the incident, defendant replied in the affirmative. Thus, the comment had a basis in the evidence, and was a reasonable inference from the line of questioning. It was not error. *State v. Herrera,* 84 N.M. 46, 499 P.2d 364 (Ct.App.1972). The failure to object precludes review. *State v. Seaton,* 86 N.M. 498, 525 P.2d 858 (1974).

We hold that the record shows no basis for reversal on cumulative prosecutorial misconduct.

**ISSUE III: Whether the imposition of a harsher penalty following a successful appeal violated defendant's due process rights.**

Upon his first jury conviction of the crime of aggravated battery, defendant was sentenced to three years' imprisonment. This sentence was suspended and he was ordered on probation for two years, to make restitution in the amount of $175.00 each month, and to pay the actual costs of the administration of the probation in an amount not to exceed $1,020.00. The de-fendant successfully appealed his conviction. Upon his retrial and second conviction of the same offense, based on substantially the same testimony before the same judge, the defendant was sentenced to three years' imprisonment, with two years of "mandatory" parole upon his release from incarceration. The defendant was credited with two days for pre-sentence confinement.

The record clearly shows that the reason that the trial court changed the sentence was due to defendant's failure to make restitution with the exception of one payment.

This issue is novel to our appellate courts in New Mexico. The only New Mexico case which involves the issue, *State v. Lopez,* 99 N.M. 612, 661 P.2d 890 (Ct.App.1983), may come close but does not apply to this case.

In *State v. Lopez,* this Court found that although the defendant's new sentence involved consecutive terms rather than the original concurrent terms, the actual term of incarceration was less than that ordered originally. The concept of "judicial vindictiveness" was not applicable to those facts.

The leading case in the United States applicable to the issue on appeal is *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In *Pearce,* the Supreme Court rejected a double jeopardy analysis of the imposition of greater penalties upon reconviction, but noted the applicability of a due process analysis:

Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

In order to assure the absence of such a motivation, we have concluded that

whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Pearce,* 395 U.S. at 725–726, 89 S.Ct. at 2080. (Footnote omitted.)

There is also authority that on resentencing, a trial court may not substitute one type or degree of punishment for another, i.e., a fine rather than a prison term, *United States v. Barash,* 428 F.2d 328 (2d Cir.1970), or a longer parole term in lieu of imprisonment, *United States v. Albanese,* 554 F.2d 543 (2d Cir.1977). The *Barash* court explained that there are problems with trade-offs between types of punishment. Any attempt to compare the different types with a view to judging "severity" would be impractical. Hence, upon retrial, absent the justifying circumstances set out in *Pearce,* the trial judge is bound to follow the kind as well as the degree of the original punishment. The court in *State v. Sorensen,* 639 P.2d 179 (Utah 1981), elaborated on this holding by noting that the possibility of a trade-off could also conceivably act as a deterrent to the exercise of the right to appeal.

We conclude that defendant was under no legal duty except moral, perhaps, to make any restitution during the pendency of his first appeal. NMSA 1978, § 31–11–1(A) (Cum.Supp.1983), states that all appeals have the effect of a stay of execution of the sentence of the district court until the appellate decision. *State v. Ramirez,* 76 N.M. 72, 412 P.2d 246 (1966).

We hold that the trial court violated defendant's due process rights when the trial court changed the original sentence based on the facts before this court.

We affirm the conviction of the trial court, but remand to modify the sentence in accordance with the original sentence and with 1977 N.M.Laws, Ch. 217, § 1 (originally codified as § 31–20–6), which states that probation costs shall not exceed $200 annually. The $1,020 probation cost limit imposed by the district court does not apply to offenses committed before June 19, 1981. AG Op.No. 81–15 (1981); NMSA 1978, § 31–20–6 (Repl.Pamp.1981) (Annot.). The offense involved in this case was committed on March 4, 1981.

IT IS SO ORDERED.