703 P.2d 877
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**William McGHEE, Defendant-Appellant.**

**No. 14824.**

Supreme Court of New Mexico.

May 8, 1985.

See also, N.M.App., 102 N.M. 159, 692 P.2d 545.

Paul Bardacke, Atty. Gen., Ida M. Lujan, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet Clow, Chief Public Defender, J. Thomas Sullivan, Appellate Defender, Santa Fe, for defendant-appellant.

**OPINION**

SOSA, Senior Justice.

Defendant William McGhee appeals his conviction and sentence for first degree murder. McGhee was tried on a charge of capital murder, the aggravating circumstances being that the victim was a witness to a crime. Additionally, he was tried on counts of armed robbery and false imprisonment. The jury returned a verdict of guilty as to all counts, but failed to find that the murder was committed with the intent to kill a witness. Therefore, there was no capital sentencing and the court imposed life imprisonment for first degree murder.

Numerous issues are raised by defendant on appeal. We discuss: whether defendant had the capacity to form the intent to commit first degree murder; whether the State met its burden of proof in overcoming the defendant's exculpatory statement; whether it was fundamental error for the trial court not to instruct the jury concerning the State's burden of proof in overcoming the exculpatory statement; and whether the trial court erred in admitting, over defendant's objection, evidence of the first robbery.

Defendant's defense at trial was based on lack of capacity to form the specific intent to commit a deliberate murder. Defendant contends that it was part of the trial strategy to admit all elements of the three offenses charged, with the exception of intent and deliberation for first degree murder.

The facts reveal that there were two robberies of two different Pic Quik convenience stores in Las Cruces. The first occurred shortly before midnight on October 6, and the second about four hours later in the early morning of October 7, 1981. Following the second robbery the store clerk, Lynch, was taken by defendant to a dam site in the desert, shot in the back of the head and buried in the sand.

Johnson, a friend of defendant, testified he was present at the first robbery, but not at the second. After the second robbery,

at about three in the morning, defendant called Johnson and told him he would pick him up at his apartment parking lot. Defendant arrived with Lynch and was driving Lynch's car. Defendant told Johnson to hold the gun on Lynch while defendant drove. The three men drove in Lynch's car to the dam site.

Johnson stated he witnessed the killing of Lynch by defendant at the dam site. He further testified that defendant ordered Lynch to get out of the car and to lie on the ground. Defendant told Johnson to give him the gun. Defendant then walked around the car, put his knee in the victim's back, put the gun to the back of victim's head and pulled the trigger. Thereafter, defendant ordered Johnson to help bury the victim at the murder site.

The two men returned to Las Cruces to gather a few belongings and then drove in Lynch's car toward Dallas. They were stopped and arrested at Sierra Blanca, Texas.

Johnson told the jury that during the drive from the murder site to Las Cruces, defendant told Johnson that he hoped Johnson's girlfriend had not seen the victim in the car when he picked Johnson up, or he would have to kill her. Johnson testified defendant also told him on the drive back that he was not going to go back to the penitentiary "for no white boy" because it was easier to beat murder than armed robbery. On cross-examination, Johnson said he was afraid after the first robbery because defendant threatened to kill him if he told anyone.

The jury also heard testimony regarding defendant's use of liquor and drugs prior to the killing. Johnson testified that he and defendant had dinner together on October 6, had been drinking and using drugs, and that near midnight they went to the first Pic Quik where defendant robbed the store at gunpoint. Several non-involved persons testified they had seen or spoken with defendant either late on October 6 or early in the morning on October 7, and that the defendant was stumbling or appeared in a groggy condition that could be associated with alcohol or drug use. A Texas border patrol officer observed defendant at the Hudspeth County jail where he was asleep and appeared "hungover or dopey."

## CAPACITY TO FORM INTENT

The State presented evidence on the issue of capacity to form intent in the form of the testimony of Johnson and two experts in psychology and psychiatry. Altogether, six psychologists were produced by the defendant and the State to testify as to the defendant's capacity to form the intent to kill and capacity to deliberate.

The experts had differing opinions as to whether defendant could deliberate and form an intent to kill. Dr. Welch, a psychiatrist, described numerous examples of behavior several hours before and after the time of the killing that indicated the defendant's ability to deliberate, form intent and make decisions. Additionally, he explained that certain acts which occurred close to the time of the killing demonstrated that defendant knew the consequences of his acts. A second expert agreed with Dr. Welch's conclusions.

Certain other psychological experts were of the opinion that defendant suffered from a lack of self-control and had impulsive behavioral patterns. They indicated defendant was angry because he thought Lynch had tried to notify the police by pushing a button while still at the second store. Moreover, Lynch had made him mad when he commented in the car that defendant would not "get away with this." Some of the psychologists thought Lynch's comments caused the defendant to shoot Lynch impulsively. Other factors contributing to their conclusion that defendant did not deliberate were (1) the ingestion of drugs and alcohol and (2) the stress at the time of the killing. One of the psychologists who thought defendant acted impulsively indicated, however, that defendant might have known he was going to kill Lynch up to sixty seconds before the shooting.

 Properly qualified experts may testify as to a defendant's intent. *State v.*

*Ellis*, 89 N.M. 194, 548 P.2d 1212 (Ct.App.), *cert. denied*, 89 N.M. 206, 549 P.2d 284 (1976). The jury may reject an expert's opinion in whole or in part. *Van Orman v. Nelson*, 78 N.M. 11, 427 P.2d 896 (1967). Conflicts in the testimony of expert witnesses are to be resolved by the finder of fact. *State v. Ellis.*

**Exculpatory Statement**

Defendant argues that evidence contained in a statement he made to the police is insufficient to support his conviction. He maintains that his statement, which the State offered into evidence, is exculpatory as to the element of deliberation and formation of specific intent which is required for a conviction of first degree murder.

As to admissibility of defendant's statement, the trial court ruled there was compliance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that there was a knowing and intelligent waiver and consent for an interview with the defendant. The statement was tape-recorded and relevant portions were played for the jury. Defense counsel subsequently read exculpatory portions of the transcript of the tape into the record as part of the defense of lack of capacity to form intent. These exculpatory portions included the defendant explaining that he guessed he killed Lynch because of insanity; that he did not kill Lynch because he was a witness; that the killing was a "split second type of thing"; and that he regretted the killing.

This Court has held that if the State offers a statement of the accused containing exculpatory matter, the State must overcome the defendant's claim of excuse or justification. *State v. Lopez*, 79 N.M. 282, 442 P.2d 594 (1968). *Lopez* explains that the State's burden is not to prove the defendant's statement is untrue, but simply that

> proof be submitted concerning the occurrence which, if true, or believed by the jury, would support a conclusion that the

statement was not true, or, even if true, that the facts did not require acquittal. *Id.* at 286, 442 P.2d at 598.

Defendant argues Johnson's evidence is insufficient because Johnson's credibility was impeached, Johnson's statements and defendant's exculpatory explanation for his actions were consistent, and the abduction and burying of Lynch was circumstantial. Circumstantial evidence may be used to establish an element of a crime. *State v. Sanchez*, 98 N.M. 428, 649 P.2d 496 (Ct.App.), *cert. denied*, 98 N.M. 478, 649 P.2d 1391 (1982). The determination of the weight and effect of the evidence, including all reasonable inferences to be drawn from both the direct and circumstantial evidence is a matter reserved for determination by the trier of fact. *State v. Vigil*, 87 N.M. 345, 533 P.2d 578 (1975).

The inculpatory portion of the defendant's statement and the testimony of Johnson and the two doctors, if believed by the jury, were sufficient to overcome defendant's contention that he did not deliberate and was incapable of forming the intent to commit first degree murder. *See State v. Lopez.*

**Failure to Instruct on Burden**

The defendant claims fundamental error because the trial court failed to instruct the jury on the State's burden of disproving the defendant's exculpatory statement with proof sufficient to meet the reasonable doubt standard. Defendant concedes that he did not object at trial to the court's failure to instruct on the State's burden of proof. We have previously stated that the burden of proof is that set out in *Lopez*, and not the standard of disproving the statement beyond a reasonable doubt. *State v. Lopez.* We hold there was sufficient evidence under the *Lopez* standard for the jury to believe the State's theory on intent and to disbelieve defendant's denials of deliberation and intent.

We have stated:

In determining whether the evidence supports a criminal charge or an essential element thereof, the appeals court must view the evidence in a light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of a verdict of conviction. [Citations omitted.]

*State v. Lankford*, 92 N.M. 1, 2, 582 P.2d 378, 379 (1978).

█ We have reviewed the record and find there was sufficient evidence for the jury to find that defendant had the capacity to deliberate and form the specific intent to kill. A reviewing court may neither reweigh the evidence nor substitute its judgment for that of the jury. *Id.*

## EVIDENCE OF THE FIRST ROBBERY

Next we consider whether evidence of defendant's commission of the first robbery was probative on the issue of defendant's ability to form the specific intent to commit first degree murder following the second robbery.

At trial defendant advised the court he would present evidence on diminished capacity and lack of ability to deliberate. Defendant's position was that the first robbery was not relevant to deliberation. The State's position was that evidence of the first robbery did not establish deliberation but it did indicate a capacity to form a specific intent to perform a particular act during a time period close to the time of the killing. The court offered several times to give the cautionary instructions in NMSA 1978, UJI Crim. 40.28 (Repl.Pamp. 1982), regarding evidence of other wrongs and offenses. Defendant refused the instructions.

█ The admission of evidence is within the trial court's discretion and will not be disturbed absent a clear abuse of discretion. *State v. Stout*, 96 N.M. 29, 627 P.2d 871 (1981). *See State v. Valdez*, 83 N.M. 632, 495 P.2d 1079 (Ct.App.1972), *aff'd*, 83 N.M. 720, 497 P.2d 231 (1972), *cert. denied*, 409 U.S. 1077 (1972). Additionally, admission of evidence under NMSA 1978, Evid. Rule 404(b) (Repl.Pamp.1983), is governed by the same abuse of discretion standard. *State v. Allen*, 91 N.M. 759, 581 P.2d 22 (Ct.App.), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978). Rule 404(b) provides that evidence is admissible for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The evidence of acts performed during the first robbery was used as a basis for forming the opinion of the expert psychistrist, Dr. Welch, a State's witness on the defendant's capacity to form intent. At trial Dr. Welch testified that the acts of defendant close to the time of the killing were indicative of his ability to form intent and to deliberate. Examples given by Dr. Welch of acts performed by defendant prior to the second robbery that required intent and deliberation were: the forming of the intent to rob the first Pic Quik store; carrying a gun; directing the clerk and a customer at the first store to go into the back room and count to five, then directing them to count to fifty, thus showing a recognition that more time was required to get away. In Dr. Welch's opinion, defendant showed he recognized the consequences of the act of robbing the first store when he warned Johnson not to tell anyone about the robbery.

█ Evidence is admissible under Rule 404(b) if it is probative of a material element at issue. *State v. Beachum*, 96 N.M. 566, 632 P.2d 1204 (Ct.App.1981). We are convinced that the acts of defendant within hours of the killing were so close in time as to be relevant and probative of the material issue of capacity to form intent.

Furthermore, defendant agreed to allow certain portions of his taped statement to be read to the jury because he thought it was going to benefit him. The defendant's statement, which included references to the first robbery, was played for the jury over defendant's objection. Exculpatory portions were then read from a transcript to the jury at defendant's request. The exculpatory portions included the following:

Officer: "What made you decide to get hold of your friend, Ron Johnson, to come with you?"

McGhee: "Well * * * * because I knowed * * * that he would know that I did it to that other Pic Quik."

We cannot allow defendant to selectively use and exclude evidence regarding the robbery of the "other Pic Quik."

 Defendant also argues that the prejudicial effect of the evidence of the first robbery outweighed its probative value. On appeal we must consider the probative value in determining whether discretion was abused. *State v. Schifani*, 92 N.M. 127, 584 P.2d 174 (Ct.App.), *cert. denied*, 92 N.M. 180, 585 P.2d 324 (1978). The trial court must weigh the probative value of the evidence as against its possible prejudicial effect when admitting evidence as to intent and motive under NMSA 1978, Evid.Rule 403 (Repl.Pamp.1983). *Id.*

In *State v. Garcia*, 99 N.M. 771, 776, 664 P.2d 969, 974, *cert. denied*, 462 U.S. 1112, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983), we stated,

> The fact that competent evidence may tend to prejudice a defendant is not grounds in and of itself for exclusion of that evidence. The trial court must determine whether the probative value of the evidence is outweighed by its prejudicial effect. In doing this, the trial court must be sensitive of the potential prejudice that is always inherent in evidence of a defendant's prior wrong acts. The trial court has a duty to excise evidence of uncharged acts if it can be done without destroying the relevancy of the evidence which addresses the charges, defenses or issues. However, if the evidence is so interwined, the trial court may allow the evidence. [Citations omitted.]

Furthermore, under Rule 404(b) the evidence of other wrongs is admissible to show defendant's "intent" or "plan." *State v. Schifani*, 92 N.M. at 129, 584 P.2d at 176. The evidence the trial court admitted in *Schifani* was testimony of persons who had had dealings with the defendant similar to those of the victim's in the three counts being tried.

 The only defense raised by defendant was that of incapacity to form the intent to commit first degree murder. In light of this defense, the acts of the defendant which show the ability to form the intent to commit two identical crimes within four hours is evidence of a continuing performance of conduct by the defendant that is so "intertwined" with the ability to form the intent to commit first degree murder after the second robbery, that it is permissible evidence under *State v. Garcia.*

 The trial court properly exercised its discretion in determining that the probative value of evidence of the first robbery outweighed any prejudicial effect. *State v. Garcia.*

The remaining issues raised by defendant were reviewed and found to be without merit.

The conviction and sentence are affirmed.

IT IS SO ORDERED.

FEDERICI, C.J., and WALTERS, J., concur.