846 P.2d 1070

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**David Sylvester LAMURE, Sr.,
Defendant–Appellant.**

No. 13255.

Court of Appeals of New Mexico.

Dec. 21, 1992.

Tom Udall, Atty. Gen., Barbara Mulvaney, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Nancy Hollander, Freedman, Boyd, Daniels, Peifer, Hollander, Guttmann & Goldberg, P.A., Albuquerque, for defendant-appellant.

## OPINION

BIVINS, Judge.

Defendant, a pathologist, appeals his convictions on five counts of criminal sexual contact of a minor (CSCM), two counts of criminal sexual penetration (CSP), and one count of extortion, all involving one adolescent victim. He makes the following claims on appeal: (1) ineffective assistance of counsel in (a) failing to diligently investigate an alibi, (b) failing to object to evidence of prior bad acts involving other adolescents, and (c) failing to object to allegedly improper closing argument; (2) trial court error in (a) permitting the State to amend the indictment at trial in light of the court's simultaneous denial of Defendant's request for a continuance to investigate possible alibi witnesses, (b) denying Defendant's motion in limine to exclude evidence of uncharged misconduct involving Defendant's two sons; (3) reversible error resulting from the prosecutor's closing argu- ment; (4) reversible error resulting from missing exhibits; and (5) cumulative error resulting in denial of a fair trial. We affirm.

## BACKGROUND

Defendant was indicted on numerous counts involving a single adolescent victim. The indictment included two counts of extortion, twelve counts of CSCM, one count of kidnapping, and seven counts of CSP. Defendant admitted to having a sexual relationship with the victim. That fact was not at issue. The primary issues centered around when some of these activities occurred and, most importantly, whether they all occurred consensually or as a result of Defendant's improper use of his position of authority to coerce the victim. It is important to keep in mind that the defense strategy was to openly and forthrightly reveal Defendant's sexual problems in an attempt to convince the jury that he did not coerce the victim. In short, Defendant presented himself as powerless over his addiction to deviant sexual behavior and felt it important to divulge this sickness. This strategy was not altogether unsuccessful. The jury acquitted Defendant on many of the charges.

### 1. *Ineffective Assistance of Counsel*

After trial, Defendant employed new counsel to pursue a motion to reconsider denial of a motion for a new trial, and also to handle this appeal. Although Defendant presents his claims of ineffective assistance of counsel under several different points, we discuss them together. We apply the standards set forth in *State v. Crislip*, 109 N.M. 351, 353–54, 785 P.2d 262, 264–65 (Ct.App.), *cert. denied*, 109 N.M. 262, 784 P.2d 1005 (1989).

#### a. *Failing to Investigate Alibi*

Under the State's charges, Defendant's sexual activities with the victim occurred during four time periods. The second time period was described in the indictment as being "on or about August 22, 1987." During trial, after the victim testified, it became apparent that the date should have

been August 25 rather than August 22. The State successfully moved to amend the pertinent counts of the indictment. The trial court denied Defendant's request for a continuance to investigate possible alibi witnesses for August 25.

■ Defendant claims his counsel was ineffective for failing to discover, prior to trial, his exact whereabouts on August 25, 1987, the date of the second series of alleged sexual encounters with the victim. After trial, counsel was able to find telephone and hospital records that indicated Defendant did not arrive at the hospital, the location of the alleged encounters, until 6:00 p.m. on that day and was in a staff meeting for part of the evening. Defendant moved for a new trial, alleging newly discovered evidence and adding the ineffective assistance of counsel claim. After an evidentiary hearing on the motion, the trial court denied it, stating that the new evidence would not change the result of the trial because, although it established Defendant's whereabouts on August 25, the victim's whereabouts on that date were never clear. In other words, even with the new evidence the jury could have found that the victim and Defendant were at the hospital at the same time.

It is clear that counsel could have discovered, prior to trial, the more detailed information about his client's activities on August 25. However, counsel's testimony at the hearing on the motion for new trial established that he had good reasons for failing to do so, so that the failure did not constitute ineffective assistance. First, Defendant himself had told counsel that the hospital did not have staff meetings during the summer, and did not tell counsel of that particular staff meeting. Also, August 25 was after school started for the victim, and the victim's pretrial statements indicated he did not work at the hospital after school began, and that he was last at the hospital on August 21, for a banquet. Counsel therefore focused on the victim's whereabouts and not on Defendant's. Counsel also tried to determine whether there was a record at the hospital that would establish when the pathologists were

at the hospital and in the laboratory, and was told there was no such record. At the hearing, counsel testified that "[y]ou could characterize it that the defendant forgot to tell me he was at the meeting," so that counsel believed there was no meeting. At the same time, counsel also believed that no one remembered where they were on August 25, 1987, and that no records existed with which they could refresh their memories. All of this establishes that the failure to more fully develop Defendant's whereabouts was caused partly by Defendant's own misstatements to counsel, and partly by counsel's strategic decision to focus on the victim's location rather than Defendant's.

Under these circumstances, we do not believe that the trial court was compelled to find ineffective assistance of counsel. *See State v. Dean,* 105 N.M. 5, 8, 727 P.2d 944, 947 (Ct.App.) (this court will not attempt to second-guess tactics and strategy of trial counsel), *cert. denied,* 104 N.M. 702, 726 P.2d 856 (1986).

### b. *Failing to Object to Prior Bad Acts Evidence*

The trial court conducted a pretrial hearing on Defendant's motion in limine to exclude evidence of prior bad acts involving a number of adolescent males, including Defendant's two sons, all of whom had been named by the State as witnesses. At the hearing, the defense put on evidence through Dr. Dougher, a clinical psychologist specializing in treatment of sex offenders. This testimony previewed much of what would be offered by the defense at trial. Dr. Dougher stated that it was his opinion that Defendant is a homosexual hebephile and that, based on a review of extensive records, including records of sexual activities between Defendant and a number of the other adolescent males, it was not likely that Defendant used force or coercion in his sexual encounters. The psychologist discerned a pattern involving all of these adolescents, including the victim, in which Defendant boldly touched the adolescent's genitals; observed for reaction; progressed if the approach was accepted;

and backed off if the approach was rejected.

At that hearing and following Dr. Dougher's testimony, defense counsel withdrew his objection to the State's calling the adolescent males as witnesses, because such testimony would provide essential background for Dr. Dougher's opinion testimony. He indicated, however, that he would object to the State's calling Defendant's two sons because that testimony was highly prejudicial, confusing, and not relevant to any issues. The admissibility of the sons' testimony will be discussed later.

■ We reject Defendant's claim of ineffective assistance of counsel based on withdrawal of the objection. The withdrawal of the objection to the testimony was clearly a matter of tactics and strategy. As already noted, Defendant's position at trial was that, although he did have a sexual relationship with the victim, it was entirely voluntary on the victim's part. In presenting that position, Defendant relied on expert testimony about his condition of homosexual hebephilia, which causes him to be sexually attracted to male adolescents. Dr. Dougher testified that it was important for him, in forming an opinion about Defendant's condition, to understand Defendant's sexual history. He also stated that the testimony of the other adolescents who had been approached by Defendant was important in determining whether there was a consistent pattern in the way Defendant approached the adolescents. Finally, Dr. Dougher gave his opinion that Defendant's claim of a noncoercive relationship with the victim was more consistent with Defendant's condition than the victim's claim of a coercive relationship. Thus, Defendant used the testimony of the adolescents to support the opinion of his expert witness which, in turn, bolstered his defense. The failure to object to this evidence, then, was a matter of trial tactics and strategy that

we will not second-guess on appeal.[1] *See State v. Rodriguez,* 107 N.M. 611, 615, 762 P.2d 898, 902 (Ct.App.) (ineffectiveness not necessarily established even when appellant establishes that trial counsel used improvident strategy or unsuccessful tactics), *cert. denied,* 107 N.M. 546, 761 P.2d 424 (1988).

### c. *Failing to Object to Allegedly Improper Closing Argument*

Defendant claims failure of defense counsel to object to the use of prior misconduct in the State's closing argument constituted ineffective assistance of counsel. While failure to object to improper closing argument may constitute ineffective assistance, because we find no reversible error in these comments, see point 3, it follows that trial counsel's performance did not fall below the standards because he failed to object.

### 2. *Trial Court Error*
### a. *Amendment of Indictment and Denial of Continuance*

■ The indictment alleged that the second series of incidents occurred "on or about" August 22. At trial, the victim testified, albeit ambiguously, that the incidents occurred on the Tuesday following the 18th, which would have been August 25. The State moved to amend the indictment to conform to the evidence. Defense counsel stated that there would be no objection, as long as Defendant was given an opportunity to investigate an alibi for August 25 and file a late notice of alibi if necessary. In response, the State argued that defense counsel's investigator had been aware of the changed date for several months. Defendant then objected to the amendment. The judge allowed the amendment, and said he would take defense counsel's request under advisement, and would not rule on it "at this time."

---

1. Under the circumstances of this case, Defendant may not have had a choice but to pursue the strategy he did. His wife knew about his relationship with the victim, and he had been forced to (or volunteered to, it is not clear which) undergo treatment as a result. His wife had spoken to the victim's mother about the relationship between Defendant and the victim. Therefore, Defendant could hardly succeed with a defense strategy of denying that anything had ever happened between the victim and himself.

Defendant never renewed his request for more time to investigate an alibi.

The facts that the judge held his ruling in abeyance instead of denying Defendant's request, and that Defendant never renewed his request, are fatal to Defendant's position on this issue. A party must invoke a ruling from the trial court in order to preserve an issue for appeal; it is not enough to simply make a motion. *See, e.g., State v. Cordova*, 100 N.M. 643, 646, 674 P.2d 533, 536 (Ct.App.1983); *State v. Andrada*, 82 N.M. 543, 548, 484 P.2d 763, 768 (Ct. App.), *cert. denied*, 82 N.M. 534, 484 P.2d 754 (1971). Since Defendant did not renew his request for more time, the trial court may well have thought Defendant had been able to investigate his alibi thoroughly while this multi-day trial was continuing. It would therefore be inappropriate to hold that the trial court erred. *Cf. State v. Garcia*, 84 N.M. 519, 521, 505 P.2d 862, 864 (Ct.App.) (where trial court denied motion for severance, but left open possibility of severing at a later time if prejudice became apparent, and defendant did not renew his motion for severance, defendant waived the issue), *cert. denied*, 84 N.M. 512, 505 P.2d 855 (1972).

b. *Incest Testimony by Defendant's Son*

As noted above, at the pretrial hearing on the motion in limine, Defendant withdrew his objection to the State calling other adolescents, but continued to object to the State presenting evidence of Defendant's prior bad acts through Defendant's sons. At trial, the prosecutor called only one of Defendant's sons, Jeff. Jeff testified to incestuous conduct with Defendant that began when Jeff was eight years old and continued until he was fifteen. He said his father would crawl into bed and rub Jeff's genitals under the covers. He also said that Defendant did the same thing to Jeff's brother and that Jeff knew what was happening because he would hear his brother's underwear "snap." Jeff testified that Defendant also rubbed Jeff's genitals

in the shower, sometimes saying that he was giving Jeff a medical examination.

In objecting at the pretrial hearing, defense counsel urged that these acts were different from the relationships with the other adolescents; that their incestuous aspect made the acts different; that introducing evidence of them would create confusion; and that introducing evidence of them would compel the defense to go into Jeff's mental health problems.

SCRA 1986, 11–404(B), states that:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

*See State v. Lopez*, 85 N.M. 742, 743–44, 516 P.2d 1125, 1126–27 (Ct.App.1973). At the pretrial hearing, the trial court overruled Defendant's objection to the sons' testimony, indicating that it was relevant and came within one or more of the exceptions, such as motive, opportunity, or intent. The court stated that there were similarities between Defendant's activities with his sons and those alleged in the indictment, and that the evidence would be admitted.

We review the trial court's actions for abuse of discretion. *State v. McGhee*, 103 N.M. 100, 104, 703 P.2d 877, 881 (1985). Applying that standard, we hold that the court did not abuse its discretion in allowing Jeff's testimony at trial.

Even assuming that the testimony could be said to prove Defendant's character or that he acted in conformity with this character,[2] the evidence was not offered for that purpose. As previously discussed, the question of whether Defendant used his position of authority to coerce his victim was a critical issue in the case. Defendant argued at the pretrial hearing that the contacts with his sons were entirely different

---

**2.** Given the defense strategy to openly disclose Defendant's deviant sexual behavior, character and propensity were nonissues in the context of

the State's case. Defendant admitted to a propensity for sex with male adolescents. He denied it was coerced.

from those with the other adolescents. While there were some differences, certain similarities existed which made Defendant's contacts with his sons highly relevant and within one or more of the exceptions to the rule.

It was important for the State that it prove Defendant used his position of authority to coerce his victim. "Position of authority" is defined as a "position occupied by a parent, relative, household member, teacher, employer or other person who, by reason of that position, is able to exercise undue influence over·a child." NMSA 1978, § 30–9–10(D) (Repl.Pamp.1984). "Undue influence" has been defined as " 'the result of moral, social, or domestic force exerted upon a party, so as to control the free action of his [or her] will....' " *State v. Gillette*, 102 N.M. 695, 702, 699 P.2d 626, 633 (Ct.App.1985) (quoting *Trigg v. Trigg*, 37 N.M. 296, 301, 22 P.2d 119, 123 (1933)). We agree with the trial court that the testimony of Defendant's son was probative of the coercion issue.

The relevance and probative value of this testimony can be demonstrated by comparing Jeff's testimony with that of one of the other adolescent victims, Terry. Terry testified that when he was thirteen or fourteen years of age, he went with Defendant's family to their cabin in Ruidoso. This was in 1975 or 1976. After they arrived, Defendant grabbed Terry in the groin area as he walked through the kitchen in the cabin. That night Defendant got into bed with Terry and put his hand inside the boy's underpants and attempted to masturbate him. Defendant then placed Terry's hand inside Defendant's pajamas and on Defendant's penis. Terry struck Defendant and ran from the room.

The following day, Defendant again grabbed Terry's groin. While driving back to Roswell, Defendant positioned the interior rear-view mirror so that he could look directly at Terry. Terry testified that Defendant gazed at him with an "evil look" which frightened and upset Terry.

Jeff testified similarly about Defendant's mean nature and his fear of Defendant. Jeff was so afraid that, on cross-examination, when defense counsel asked whether Jeff enjoyed his father's sexual advances, Jeff testified that while he did not enjoy being touched, he enjoyed his father being nice to him, and that his father was nice on those occasions. At other times he was mean. Jeff said he was afraid of his father and could not look at him while on the witness stand. This type of control bore on the question of plan, design, and intent, as did Defendant's attempt to control Terry, and was relevant to counter Defendant's contention that the relationship between Defendant and the victim was consensual.

While the contacts in question were with Defendant's sons, which made them different from those with the other boys, the use of control and the approach were similar.

The result we reach is consistent with *State v. Lucero*, 114 N.M. 489, 840 P.2d 1255 (App.1992). In the case before us, Jeff's testimony went directly to the question of whether Defendant had the plan, design, or intent to control the victim by use of position of authority. Jeff was an adolescent male when Defendant molested him, as was the victim, and Defendant used his position of authority as a father to attain his ends with Jeff, just as he used his position of authority as a supervisor to attain his ends with the victim. In *Lucero*, however, the evidence presented was so factually dissimilar to the alleged acts giving rise to the charges that it simply was not probative of plan, design, or intent. The *Lucero* Court flatly rejected the "State's assertion that occasional rejection of Defendant's request for oral sex by his girlfriend is admissible to prove he sexually assaulted the seven-year-old daughter of a friend." *Id.* at 493, 840 P.2d at 1259. The factual differences between one act, arguing with an age-appropriate girlfriend about sex, and the other, sexually molesting a seven-year-old girl, simply were too great for the former to be admissible under Rule 11–404(B) to show that the defendant had the plan, design, or intent to commit the latter.

Additionally, SCRA 1986, 11–404(A)(1), permits evidence of a pertinent character trait when offered by an accused, or by the

prosecution in rebuttal. As discussed earlier, the defense's theory was based on propensity. Defendant's expert testified that in his opinion Defendant did not use his position of authority or other types of coercion to get his way with boys. Jeff's testimony contradicted that theory. While that testimony was offered as part of the State's case, given the fact that the defense made its theory known as early as the pretrial hearing, the State could have anticipated this theory and offered rebuttal testimony before Defendant put on his case.

 In balancing the probative value of evidence with its prejudicial effect, it ordinarily would be difficult to imagine anything more prejudicial than evidence of incest. Viewing the trial in its entirety, however, we believe that the testimony in question lost much of its sting. As already noted, the defense strategy was to present an open, unabashed disclosure of Defendant's sickness and to persuade the jury that the relationships were consensual, not coercive. That strategy brought before the jury a series of witnesses who depicted, in graphic detail, Defendant's activities, including meeting men in gay bars, hustling boys off the street, and frequenting adult video parlors. We believe the jury was so inoculated to such sordid testimony, the trial court could find that the evidence of incestuous activities added little prejudicial effect to what had already been presented.

Therefore, we find no abuse of discretion in allowing this testimony under the unusual circumstances of this case.

### 3. *Closing Argument*

Defendant claims that the prosecutor engaged in an unfair closing argument that amounted to fundamental error. Since there was no objection, Defendant must rely on fundamental error. *See* SCRA 1986, 12–216 (Repl.1992).

 Defendant describes comments made by the prosecutor about Defendant's sickness, his hustling boys, and his activities in video parlors. These statements are based on the evidence. Comments on the evidence are not error or fundamental error. *See State v. Taylor*, 104 N.M. 88, 94, 717 P.2d 64, 70 (Ct.App.) (prosecution allowed reasonable latitude in closing argument, but remarks must be based on the evidence presented), *cert. denied*, 103 N.M. 798, 715 P.2d 71 (1986).

Nor do we find any error in the prosecutor's favorable comments about defense counsel, and Defendant has not provided argument or authority why this comment constitutes fundamental error. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (appellant must present argument and authority on each appellate issue).

 Finally, Defendant argues that the prosecutor expressed his personal opinion or belief as to Defendant's guilt or the credibility of witnesses. While it is correct that a prosecutor is prohibited from expressing his or her personal view on these matters, *see State v. Ferguson*, 111 N.M. 191, 194, 803 P.2d 676, 679 (Ct.App.), *cert. denied*, 111 N.M. 144, 802 P.2d 1290 (1990), we believe the comments in question did not clearly violate that principle. We are not persuaded by the State's concession that the remarks were improper.[3]

 The prosecutor's comment that "I think this [case] has the facts necessary for you to convict the accused," could be viewed as proper. *See Id.* at 195, 803 P.2d at 680 (quoting from F. Bailey & E.H. Rothblatt, *Successful Techniques for Criminal Trials* 25:16, at 565–66 (2d ed. 1985)). " 'The right of a prosecuting attorney to draw in his argument all legitimate inferences from the evidence authorizes him to assert a belief based on the evidence that the accused is guilty.' " *Id.*

 Similarly, the comment about the State's burden of proving coercive use of authority and the prosecutor's belief that Defendant was in a position of authority could be viewed as drawing on the evi-

**3.** While conceding the impropriety of the remarks, the State argued they did not rise to the level of fundamental error.

dence. While the prosecutor should not have prefaced his remark about the statements of Garth Dennis, with whom the victim had a relationship, with "I think," we are not persuaded that the jury would necessarily have considered the remark personal rather than something established by the evidence and inferences.

We will not find fundamental error in an ambiguous comment when a timely objection would have afforded the court and the prosecutor an opportunity to cure any problem by resolving the ambiguity.

### 4. *Loss of Exhibits*

■ Defendant claims he was prejudiced by the loss of two photographs that were introduced into evidence. However, he does not explain how he was prejudiced. *See State v. Hoxsie*, 101 N.M. 7, 10, 677 P.2d 620, 623 (1984) (an assertion of prejudice is not a showing of prejudice), *overruled on other grounds by Gallegos v. Citizens Ins. Agency*, 108 N.M. 722, 731, 779 P.2d 99, 110 (1989).

Defendant relies on *State v. Chouinard*, 96 N.M. 658, 634 P.2d 680 (1981), *cert. denied*, 456 U.S. 930, 102 S.Ct. 1980, 72 L.Ed.2d 447 (1982). Defendant's reliance is misplaced. *Chouinard* involved the destruction of evidence before trial. Here, we are dealing with two photographs, both of which were apparently admitted into evidence and presumably published to the jury. Thus, Defendant was not deprived of the opportunity to have the jury consider these photographs, even if the jury was unable to take them to the jury room during the deliberations. The loss of the exhibits does not require reversal.

### 5. *Cumulative Error*

Having found that no error occurred, we reject this claim. *See State v. Isiah*, 109 N.M. 21, 32, 781 P.2d 293, 304 (1989) (where there has been no accumulation of irregularities at trial, cumulative error does not exist).

**1.** The one difference of substance is an amendment to Federal Rule of Evidence 404(b) effective in 1991, which requires the prosecutor to

We affirm Defendant's convictions.

IT IS SO ORDERED.

DONNELLY, J., concurs.

HARTZ, J., specially concurs.

HARTZ, Judge (specially concurring).

I concur in the result and join in all of Judge Bivins' opinion for the Court except the discussion under the heading "Incest Testimony by Defendant's Son."

I would not rest admissibility of the incest testimony on SCRA 1986, 11–404(B). To understand that rule properly, it needs to be read in the context of the entire Rule 11–404, as well as SCRA 1986, 11–405. These rules are virtually identical to Federal Rules of Evidence 404[1] and 405. For ease of reference I will refer to the two rules, and their federal counterparts, as simply Rules 404 and 405. They state:

Rule 404. **Character evidence not admissible to prove conduct; exceptions; other crimes.**

A. **Character evidence generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) **Character of accused.** Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) **Character of victim.** Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) **Character of witness.** Evidence of the character of a witness, as provided in Rules 11–607, 11–608 and 11–609.

B. **Other crimes, wrongs or acts.** Evidence of other crimes, wrongs or acts

provide notice of evidence to be offered under that provision.

is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Rule 405. **Methods of proving character.**

A. **Reputation or opinion.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

B. **Specific instances of conduct.** In cases in which character or a trait of character of a person is an essential element of a charge, claim or defense, proof may also be made of specific instances of his conduct.

Rules 404 and 405 establish two pertinent general propositions. One is that ordinarily a person's character should not be used circumstantially—that is, to prove that a person acted in conformity with his or her character. This prohibition, particularly in the context of criminal prosecutions, is justified by concern that character evidence when used circumstantially is likely to be given more probative value than it deserves and may lead the fact-finder to punish a bad person regardless of the evidence of what happened in the specific case. *See* Fed.R.Evid. 404 advisory committee's note. The other proposition is that ordinarily character is not to be proved by evidence of specific instances of conduct. This prohibition is justified by the danger that when character is proved by evidence of specific acts, the inquiry into those acts may constitute minitrials that consume too much time and may distract or confuse the fact-finder. *See* Fed.R.Evid. 405 advisory committee's note.

Both of these propositions support the prohibition in Rule 404(B) against proving conduct to establish character to prove action in conformity with that character. The second sentence of Subsection B recognizes, however, that evidence of specific conduct may be relevant for other purposes. Although one might read the sentence as establishing an exception to the first sentence, *cf.* David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 135, at 117 (rev. vol. 2 1985) [hereinafter Louisell] (Rule 404 "does not exclude character evidence which is relevant for any other purpose, such as showing motive or intent."), a more natural reading of Subsection B is that the second sentence simply clarifies that the first sentence does not always exclude other-acts evidence. Under this reading one must be cautious in applying the second sentence to be sure that one is not using a rubric such as "plan" to obscure the fact that other-acts evidence is actually being used for the purpose prohibited by the first sentence.

That leaves the question of what is prohibited by the first sentence of Rule 404(B). In particular, what is meant by "character"? The most common view—what I will call the "traditional view"—equates "character" with "propensity." In other words, the first sentence excludes evidence of a person's specific acts to show that the person has a propensity to engage in a certain type of conduct to show that the person engaged in specific conduct on the occasion at issue. One school of thought would also exclude propensity evidence offered to establish that a person had a particular state of mind on the occasion at issue. *See* Lee E. Teitelbaum & Nancy A. Hertz, *Evidence II: Evidence of Other Crimes as Proof of Intent*, 13 N.M.L.Rev. 423 (1983). But the dominant approach appears to be that the prohibition in Rule 404(B) against other-acts evidence to prove that a person "acted in conformity with" a character trait addresses only *actions*, not the state of mind accompanying the act at issue. *See* 22 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure, Evidence* § 5242, at 473–74 (Supp.1992) [hereinafter Wright & Graham]. There is, however, a widely recognized constraint on the use of propensity evidence to prove state of mind. Because the actor's state of mind is generally an issue in the case—certainly when the actor is the defendant in a crimi-

nal case—almost any evidence prohibited by the first sentence of Subsection B could be argued to be admissible to prove the actor's state of mind. Thus, to prevent the evisceration of the prohibition in the first sentence, courts commonly require that the "intent exception" be limited to cases in which the issue of intent is seriously disputed. *See* Wright & Graham, *supra*, § 5242, at 488–89.

Another view adopts a narrower definition of character. Professor Paul Rothstein has suggested that the term "character" in the first sentence of Rule 404(B) refers to only a subset of potential propensities. He provides the following definition:

> "Character" is a propensity that is both general (i.e. propensity for "honesty" or "dishonesty," "violence" or "non-violence") as opposed to specific (i.e., propensity for executing certain kinds of violent or dishonest acts, or for executing them in a certain manner) and possessed of good or bad moral connotations.

Paul F. Rothstein, *Evidence in a Nutshell: State and Federal Rules* 355–56 (2d ed. 1981). *See generally* Wright & Graham, *supra*, § 5233; A.B.A. Criminal Justice Section, Federal Rules of Evidence: A Fresh Review and Evaluation, 120 F.R.D. 299, 322–24 (1987) [hereinafter A.B.A.]. His definition of "character" is apparently based on the observation that judicial decisions tend to admit evidence of non-character propensities pursuant to the second sentence of Subsection B. These decisions can then be rationalized on the ground that evidence of non-character propensity is more likely to be probative and less likely to lead to unfair prejudice than is evidence of character. Professor Rothstein's discussion of the admissibility of propensity or character evidence has been described as "[a] valiant effort to make general sense out of general nonsense." 1A Wigmore, *Evidence* § 54.1, at 1156 n. 2 (Tillers rev. 1983) [hereinafter Wigmore]. In my view adoption of his approach would lead to greater judicial candor and a sounder analysis of the critical factors arguing for or against admissibility.

I would not admit the incest testimony under either the traditional approach or Professor Rothstein's approach. First, under the traditional approach, the court must determine whether there is some "other" purpose (other than that prohibited by the first sentence of Rule 404(B)) for the evidence. The majority opinion states that the incest testimony "went directly to the question of whether Defendant had the plan, design, or intent to control the victim by use of a position of authority." The incest testimony, however, does not establish a "plan" (which I take to encompass also the term "design") as that term should properly be used in applying Rule 404(B). I see no relevance for the incest testimony, and the majority suggests none, other than via the chain of logic that because Defendant engaged in similar conduct in the past, he was more likely to have done so on the occasions alleged in this case. A leading treatise states:

> The justification for admitting evidence of other crimes to prove a plan is that this involves no inference as to the defendant's character; instead his conduct is said to be caused by his conscious commitment to a course of conduct of which the charged crime is only a part. The other crime is admitted to show this larger goal rather than to show defendant's propensity to commit crimes.

Wright & Graham, *supra*, § 5244, at 499–500. For example, in a prosecution of a defendant for murdering one of her partners, the state could prove her plan to take total control of the company by removing her partners through any means available, including blackmail, involuntary commitment to mental institutions, murder, etc. The evidence in this case is rather similar to evidence whose admission is criticized by the treatise:

> A recent Washington case illustrates the problem many courts have in distinguishing between "plan" and "modus operandi" as grounds for admission of other crimes. The defendant was charged with two counts of statutory rape and two uncharged crimes were admitted. In all of these, the defendant had enticed

teenage runaways into exchanging sex for food and shelter. This common modus operandi was said to be admissible under Rule 404(b) to prove that defendant had engaged in intercourse as part of a plan to take advantage of runaways in this fashion.

This is evidence of propensity, not plan. But the opinion suggests that what misled the court was to read "plan" to mean something like a blueprint. Proof that the witch had constructed one gingerbread house will support an inference that she has the "plans" for this type of architectural endeavor but it does not prove whether or not she will ever use the blueprint to construct another lure for lost children. It is only when we can infer a plan for a subdivision to be called "Gingerbread Acres" that we can infer from the plan that the witch also constructed a second house.

To say that the defendant had a "plan" to seduce every runaway he could may not do violence to the language but it does undermine the policy of Rule 404(b) by permitting the use of propensity to prove conduct. To be properly admissible under Rule 404(b) it is not enough to show that each crime was "planned" in the same way; rather, there must be some overall scheme of which each of the crimes is but a part.

Wright & Graham, *supra,* at 504.

As for use of the incest testimony to prove intent, there was no serious dispute regarding Defendant's "intent to control the victim by use of a position of authority." I am not even sure that such intent was an element of the offense under NMSA 1978, Section 30-9-11(B)(1). But even if it was an element, the real dispute concerned Defendant's conduct, not his mental state at the time. If he acted in the manner described by the alleged victim, he undoubtedly had the requisite intent. If Defendant acted in the way that he described, he did not have the intent. This was not a case in which the act was admitted and the jury question was the defendant's state of mind.

Under Professor Rothstein's approach, the issue is somewhat more difficult. The propensity at issue is what one might call "coercive homosexual hebephilia." That propensity has moral overtones, but it is probably too specific to be considered a trait of "character," as defined by Rothstein. *Cf. State v. Swavola,* 114 N.M. 472, 477, 840 P.2d 1238, 1243 (App.1992) [Vol. 31, No. 47, SBB 1064, 1066] (trait was not a sufficiently general propensity to fit the "character" rubric). Nevertheless, the Rothstein approach does not require admission of all non-character propensity evidence. Indeed, there are strong reasons to analyze with particular care whether non-character propensity evidence should be excluded pursuant to Rule 11-403. That rule, which tracks Federal Rule 403, states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Even if the absolute exclusionary principle stated in the first sentence of Rule 404(B) should be applied only to evidence of acts used to prove "character" as defined by Rothstein, the underlying concerns expressed in that rule must still be considered when the acts are used to prove a non-character propensity. One cannot ignore the long tradition of courts and commentators expressing fear that jurors are too likely to give undue weight to evidence of a defendant's prior misconduct and perhaps even to convict the defendant solely because of a belief that the defendant is a bad person. Wigmore, *supra,* § 54.1. Also, admission of evidence of other misconduct may lead to a distracting and time-consuming trial within a trial. I find it instructive that commentators who recognize that propensity evidence often should be admitted would impose limitations on the admissibility in criminal cases of evidence of other crimes beyond the limitations set forth in Rule 403. *See* A.B.A., *supra,* at 330 (probative value must substantially outweigh danger of improper prejudice, etc.); Richard B. Kuhns, *The*

*Propensity to Misunderstand the Character of Specific Acts Evidence*, 66 Iowa L.Rev. 777, 806 (1981) (probative value must outweigh danger of prejudice, etc.).

With these considerations in mind I would not admit the incest testimony even under the Rothstein approach. Because of the remoteness in time of the incest and the difference in nature of the incest incidents and the incidents at issue in this case, I do not think that the evidence was sufficiently probative of Defendant's alleged propensity to abuse his authority in order to engage adolescent males in sexual activity.

Nevertheless, the testimony was admissible in the specific circumstances of this case. What changes the analysis is the nature of Defendant's defense. That defense, which was disclosed before trial, was that (1) Defendant was a homosexual hebephile, (2) such hebephiles act consistently in using or not using coercion to satisfy their drives, (3) Defendant had consistently not used coercive methods, and (4) therefore it was unlikely that Defendant used the coercive methods described by the alleged victim.

Given that defense, the incest testimony was admissible, even if one views Defendant's homosexual hebephilia (whether coercive or non-coercive) as a matter of "character." Under Rule 404(A)(1) an accused is permitted to present evidence of his character, in which case the prosecution may offer evidence "to rebut the same." Of course, not every prior act of Defendant would necessarily be relevant as rebuttal, but the incest testimony, which might otherwise seem too remote in time and different in nature to be probative, became very much in point in light of the testimony of Defendant's expert. Also, I agree with the majority that the trial judge could properly find little chance of unfair prejudice from the incest testimony in the context of this case.

To be sure, the incest testimony was admitted before Defendant's expert witness testified at trial concerning Defendant's homosexual hebephilia. But Defendant's attorney made his proposed defense so clear before trial—the expert testified at length at a pre-trial hearing and defense counsel withdrew his objection to almost all of the other prosecution evidence regarding Defendant's acts of homosexual hebephilia on the ground that it would be relevant to the defense expert's testimony—that any error in taking the State's evidence out of order could only be harmless error. Indeed, Defendant may have been better off having the evidence presented in the State's case in chief than having it emphasized in the State's rebuttal case.

There is also a potential problem arising from Rule 405, which I repeat:

**A. Reputation of opinion.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

**B. Specific instances of conduct.** In cases in which character or a trait of character of a person is an essential element of a charge, claim or defense, proof may also be made of specific instances of his conduct.

Was the incest testimony a proper means of proving the nature of Defendant's homosexual hebephilia? Because Defendant's homosexual hebephilia was not an essential element of the charge or his defense, Subsection B does not apply; and Subsection (A) appears to prohibit proof of specific instances of conduct to rebut Defendant's character evidence. There are, however, three potential means of overcoming this obstacle.

First, the above straightforward reading of Rule 405 may not be the law in New Mexico. In *State v. Baca*, 114 N.M. 668, 845 P.2d 762 (1992), our Supreme Court wrote, "In cases where the pertinent character trait of the victim *goes toward proving* an essential element of the defense, proof may be made of specific instances of the victim's conduct. *See* SCRA 1986, 11–405(B)...." (Emphasis added; citation to Court of Appeals opinion omitted). Our Supreme Court thus reads "is an essential

element" to mean "goes toward proving an essential element." In *Baca* the defendant tried to support a claim of self-defense by offering evidence of specific conduct that established the violent disposition of the victim. (Proof of the violent disposition of the victim is a circumstantial use of character, not proof of an essential element of the defense of self-defense. *See* Fed.R.Evid. 404 advisory committee's note.) Although there is authority directly to the contrary in interpreting identical language in Federal Rule of Evidence 405, *e.g.*, *Perrin v. Anderson*, 784 F.2d 1040, 1045 (10th Cir. 1986), the *Baca* court relied on a pre-rule opinion, *State v. Ardoin*, 28 N.M. 641, 216 P. 1048 (1923), as authority for admitting evidence of specific acts of violence, subject only to the general requirements of Rule 11–403. Given the authority of *Baca*, the evidence of specific acts illustrating Defendant's homosexual hebephilia appears to be admissible.

A second approach is more straightforward. Simply put, Defendant cannot complain because he opened the door to such testimony when in a pretrial hearing his attorney informed the court of his intent to rely on specific conduct to prove Defendant's psychological condition. When withdrawing his motion in limine objecting to the State's calling various witnesses who had engaged in sexual conduct with Defendant, defense counsel stated that his expert "pretty clearly testified that [Defendant's] sexual history is relevant and is material to his consideration and his opinions."

The third approach is perhaps the most interesting. Psychiatric testimony of character is simply sui generis.

> [I]t is settled that specific acts by the accused may be shown, to prove either sanity or the lack of it. Yet the mental element in dispute in these cases is generally *not* thought to involve character as that term is used in [federal] rules [of evidence] 404 and 405, but a separate aspect of the psyche, hence to lie beyond reach of these provisions.

Louisell, *supra*, § 141, at 279–80. *But cf.* Wright & Graham, *supra*, § 5233, at 355–

56 (concluding that "at least some mental traits are to be defined as 'character' under Rule 404.") Once Defendant offered a psychiatric defense based on an expert's evaluation of Defendant's prior conduct, it was appropriate for the State to rebut that defense by proving specific conduct inconsistent with the alleged psychiatric condition. In this case the incest testimony could be viewed as inconsistent with the expert's conclusion that Defendant would not use a position of authority to satisfy his homosexual hebephilia. It was therefore admissible.

I recognize that the above theories of admissibility were not the ones relied upon by the district court. Yet an appellate court can affirm on a basis other than that relied upon at trial if reliance on the new ground does not prejudice the defendant. *See State v. Beachum*, 83 N.M. 526, 494 P.2d 188 (1972); *Naranjo v. Paull*, 111 N.M. 165, 170, 803 P.2d 254, 259 (Ct.App. 1990). I see no prejudice here because the district court's finding of relevance under Rule 404(B) would require admissibility on the grounds that I have mentioned.