873 P.2d 285

STATE of New Mexico,
Plaintiff–Appellee,

v.

Andy RAEL, Defendant–Appellant.

No. 14848.

Court of Appeals of New Mexico.

March 14, 1994.

Tom Udall, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Winston Roberts–Hohl, Santa Fe, for defendant-appellant.

## OPINION

BLACK, Judge.

Based on information from a confidential informant, narcotics agents obtained a search warrant for the premises where Defendant resided with his mother. When the agents executed the warrant no narcotics were found, but a rifle was discovered in Defendant's bedroom. Since Defendant had been previously convicted of a felony, he was charged with being a felon in possession of a firearm in violation of NMSA 1978, Section 30–7–16 (Cum.Supp.1993).

At trial, the district court denied Defendant's motion in limine and repeated objections directed at limiting prosecution references to Defendant's suspected drug connections. Defendant argues that these references and testimony should have been excluded under SCRA 1986, 11–404 (Rule 404) and SCRA 1986, 11–403 (Rule 403), and that he was prejudiced by the district court's admission of these references. Defendant further argues that when the State was allowed to admit, over objections, portions of the police report stating that Defendant had admitted he dealt drugs "a little", it was error not to grant Defendant's request to admit the full police report indicating no drugs had been found in the search. Because we agree it was reversible error to allow the prosecutor to interject Defendant's alleged connection

with drugs, we do not address Defendant's second argument.

## I. *FACTS*

Defendant, a convicted felon, was on parole. He was summoned to his parole officer's office, and, when he arrived there, he was served with a search warrant by narcotics agents. The search warrant was based on an informant's affidavit accusing Defendant of dealing in cocaine.

The search warrant was executed, and no cocaine was found, but the narcotics agents found the rifle. There was conflicting evidence as to whether the rifle belonged to Defendant. Defendant's mother stated the rifle belonged to her deceased husband, but one of the narcotics agents testified that Defendant said the gun was his and he needed it for protection. Defendant was charged as a felon in possession of a firearm.

Before opening statements, defense counsel made a motion in limine asking the district court to direct the district attorneys to make sure that their witnesses did not refer to the fact that the warrant was issued to search for cocaine. Defendant argued that since no cocaine was found in his home, and there was no charge relating to cocaine possession, that any reference to illegal drugs would inject an improper and prejudicial element into the trial which could not be cured by a jury instruction. The State promised to instruct the witnesses to be careful about their testimony. An assistant district attorney told the court: "We will not have the officers testify that the confidential informant told them that Mr. Rael was dealing in drugs. We will exclude that." The district court denied the motion in limine.

In the opening statement, an assistant district attorney stated that the police had "learned that Andy Rael was involved in illegal activity." The assistant district attorney stated further that, upon investigation, the police "learned that Andy Rael was in fact, out of the home he was living in, selling cocaine." The defense moved for a mistrial. The motion was denied.

Later, one of the narcotics agents who executed the search warrant testified that he had Defendant under surveillance for cocaine dealing and that Defendant was a known cocaine dealer. Defendant again moved for a mistrial, which was again denied.

On rebuttal, the district attorney was permitted to read from the police report. Over objection, the prosecution was allowed to refer to a portion of the report, in which a narcotics agent claimed that Defendant told him: "I do a little because I have to survive but I don't deal as much as you think."

In closing arguments, the assistant district attorney described Defendant as a drug dealer. More importantly, she made a direct link between dealing drugs and the charge for which Defendant was on trial, possession of a firearm, telling the jury: "The search warrants authorized a search for drugs and for weapons. Why weapons? Drug dealers use weapons to defend themselves. To defend their turf. To make sure. Drugs are a dangerous business." She later reiterated: "Keeping a gun is consistent with being a drug dealer." The defense again moved for a mistrial, which was denied.

The jury convicted Defendant of being a felon in possession of a firearm.

## II. *RULE 404*

▮ Like its federal counterpart, New Mexico Rule 404 provides that character evidence is not admissible for the purpose of proving that in a specific instance a person acted in conformity with such character. *State v. Reneau,* 111 N.M. 217, 219, 804 P.2d 408, 410 (Ct.App.1990). "This prohibition, particularly in the context of criminal prosecutions, is justified by concern that character evidence when used circumstantially is likely to be given more probative value than it deserves and may lead the fact-finder to punish a bad person regardless of the evidence of what happened in the specific case." *State v. Lamure,* 115 N.M. 61, 69, 846 P.2d 1070, 1078 (Ct.App.1992) (Hartz, J., specially concurring), *cert. denied,* 114 N.M. 720, 845 P.2d 814 (1993). Therefore, testimony which amounts to evidence of a defendant's bad character, or disposition to commit the crime charged, when not offered for a legitimate purpose, is inadmissible and unfairly prejudicial. *State v. Aguayo,* 114 N.M. 124, 129, 835

P.2d 840, 845 (Ct.App.), *cert. denied,* 113 N.M. 744, 832 P.2d 1223 (1992).

█ In reversing a gun possession conviction, the United States Court of Appeals for the Fifth Circuit recently applied Federal Rule 404 to virtually identical facts. In *United States v. Ridlehuber,* 11 F.3d 516 (5th Cir.1993), officers executed search warrants and found various chemicals used to manufacture illegal drugs and guns. However, since the chemicals were consistent with both the illegal manufacture of methamphetamine and the legitimate metal plating business that Ridlehuber and his father were engaged in, Ridlehuber was only charged and convicted of possession of an unregistered short-barreled shotgun. Nonetheless, over objection, the prosecution's witnesses repeatedly testified to the link between the chemicals found at the defendant's residence and the manufacture of illicit drugs. In "closing argument[ ] the prosecutor articulated what had been intimated all along: Ridlehuber possessed the sawed-off shotgun to protect an illegal drug lab." *Id.,* 11 F.3d at 520.

Prior to trial, Ridlehuber's counsel made a motion in limine seeking an order preventing the government witnesses from alluding to the chemicals as an illegal drug lab. The government argued, as it did in response to repeated objections to drug manufacturing testimony by its witnesses, that because the drug related items were " 'inextricably linked' " with the weapon, such evidence was necessary so the jury could "evaluate all of the circumstances under which the defendant acted." *Id.,* 11 F.3d at 521. Because the analysis of the Fifth Circuit, in rejecting the government's argument, fits the present case so closely, we quote it at length:

> The connection here between the offense charged in the indictment and evidence of the uncharged offense is not so clear. We cannot say, for example, that the drug-related evidence arose out of the weapons charge. On the contrary, under the prosecution's theory of the case the opposite was true. The government argued that the shotgun was just a cog in the wheel of a larger criminal enterprise: a clandestine drug lab. The problem is that the government did not prove the existence of a drug lab—it did not have sufficient evidence to do so. If the proof were reversed and Ridlehuber was charged with and convicted of running a drug lab, with the shotgun admitted over objection, the result might be different.... But the government did not charge Ridlehuber with running a drug lab and the evidence adduced at trial did not prove the existence of a clandestine lab. Thus, we cannot allow the prosecution's unproven drug lab theory dictate what is and is not extrinsic of the charged offense.

> Furthermore, this is not a situation in which the "other acts" evidence falls outside of Rule 404(b)'s purview because the evidence of the charged and uncharged offenses both were part of a "single criminal episode." The only "criminal episode" proven here was possession of a short-barreled shotgun. The rest is conjecture.

*Id.,* 11 F.3d at 522 (citations omitted).

After noting that the government had failed to charge or prove Ridlehuber was manufacturing illegal drugs, the Fifth Circuit pointed out that there was not merely passing reference to the link between the chemicals found and the manufacture of drugs, but, rather, several witnesses explicitly made the connection. The Fifth Circuit also found it significant that, although a sawed-off shotgun could be used by drug dealers, the gun seized at Ridlehuber's residence had a defective hammer and required a tool to cock it. The Fifth Circuit concluded that allowing admission of testimony concerning Ridlehuber's possible connection with the manufacture of illegal drugs, on which the evidence was tenuous, in his trial for possession of an illegal firearm would eviscerate Rule 404(b):

> In sum, if we hold that the drug related evidence in this case is not extrinsic, the exception to Rule 404(b) embodied in the "inextricably intertwined" analysis will swallow the rule. This is so considering (1) the weakness of the proof of drug offenses; (2) the weakness of the link between the drug offenses and the particular weapon, which was not very useful for its purported purpose; and (3) the barely adequate proof of defendant's possession of the weapon, which makes the impact of the

drug evidence so much greater. Under these circumstances, Rule 404(b) prevents the government from bootstrapping evidence into this case.

*Id.,* 11 F.3d at 524. We find the analysis in *Ridlehuber,* being applied as it is to virtually identical facts, very persuasive.

The only rationale advanced by the State to justify the repeated references to the present Defendant as a known drug dealer is that this fact, if it be such, was "part of the res gestae or 'complete story.'"[1] The "complete story" is that the State lacked sufficient evidence to convict Defendant of possession or distribution of illegal drugs but relied on unsubstantiated hearsay to convince the jury Defendant was a "known drug dealer" so, ipso facto, the shotgun must belong to him. Rule 404 prohibits the admission of such extrinsic evidence.

### III. *RULE 403*

In addition to arguing Rule 404 precluded evidence of Defendant's alleged reputation as a "known drug dealer", defense counsel also argued that references to illegal drug trafficking are so inflammatory that the balancing required under Rule 403 must lead to exclusion of such testimony.[2] We also find this argument convincing.

■ While Rule 403 recognizes the district court's discretion to strike a balance between the probative value and prejudicial effect of evidence, it requires the district court to be sensitive to the potential prejudice inherent in evidence of Defendant's prior uncharged conduct. *See Aguayo,* 114 N.M. at 128, 835 P.2d at 844. "One cannot ignore the long tradition of courts and commentators expressing fear that jurors are too likely to give undue weight to evidence of a defendant's prior misconduct and perhaps even to convict the defendant solely because of a

belief that the defendant is a bad person." *See Lamure,* 115 N.M. at 71, 846 P.2d at 1080 (Hartz, J., specially concurring).

■ We again find the reasoning of the Fifth Circuit in *Ridlehuber* persuasive, this time on the proper application of Rule 403 in such circumstances:

> "[T]he central concern of rule 403 is whether the probative value of the evidence sought to be introduced is 'substantially outweighed by the danger of unfair prejudice.'" The drug-related evidence was probative on the issue of motive; it explained why Ridlehuber might have a sawed-off shotgun in his residence....
>
> The danger of unfair prejudice from admission of the drug-related evidence, by contrast, was great. The clandestine manufacture of controlled substances like methamphetamine and amphetamine is the kind of offense for which the jury may feel the defendant should be punished regardless of whether he is guilty of the charged offense.

*Ridlehuber,* 11 F.3d at 521 (quoting *United States v. Beechum,* 582 F.2d 898, 913 (5th Cir.1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979)) (citations omitted).

Evidence that even a witness had been involved with drugs has been held to be properly excluded as unduly prejudicial under Rule 403. *State v. Blea,* 101 N.M. 323, 327, 681 P.2d 1100, 1104 (1984). A mere allegation of drug sales by a defendant charged with possession of a firearm transgresses the limit of Rule 403 even more clearly. *See United States v. Sullivan,* 919 F.2d 1403, 1416 (10th Cir.1990), *cert. denied,* —— U.S. ——, 113 S.Ct. 285, 121 L.Ed.2d 211 (1992), *and cert. denied,* —— U.S. ——, 113 S.Ct. 1013, 122 L.Ed.2d 161

---

1. As to the "res gestae" concept, we note that since the adoption of the Federal Rules of Evidence, both courts and commentators have largely abandoned "the general haze of the *res gestae* doctrine." 4 David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 439, at 494 (1980); *see* 2 John W. Strong, *McCormick on Evidence* § 268 (4th ed. 1992). Its continued use in New Mexico appears to be largely limited to the felony murder context where its breadth has been se-

verely constricted. *See State v. Harrison,* 90 N.M. 439, 442, 564 P.2d 1321, 1324 (1977).

2. If the admission of evidence in violation of Rule 404 was harmless, reversal would not be appropriate. *State v. Lucero,* 114 N.M. 489, 494, 840 P.2d 1255, 1260 (Ct.App.), *cert. denied,* 114 N.M. 413, 839 P.2d 623 (1992). It is therefore necessary to engage in the balancing required by Rule 403.

(1993). In the present case, Rule 403 prohibits the admission of such prejudicial evidence.

## IV. CONCLUSION

We hold the district court incorrectly applied Rule 404 in allowing the State's witnesses to testify, over objection, that Defendant was a known drug dealer. We also hold the district court erred in allowing the prosecutor to argue that Defendant was a known drug dealer and that "keeping a gun is consistent with being a drug dealer." This evidence and argument allowed the jury to conclude that, even though there was no actual evidence Defendant was dealing drugs, Defendant was known to be a drug dealer and drug dealers keep guns, ipso facto, the rifle must belong to Defendant. Even if admissible, this evidence was certainly more prejudicial than probative and denied Defendant a fair trial. Accordingly, we reverse Defendant's conviction and remand for a new trial.

IT IS SO ORDERED.

ALARID and FLORES, JJ., concur.