899 P.2d 1139

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**John JONES, Defendant–Appellant.**

No. 15385.

Court of Appeals of New Mexico.

June 6, 1995.

Certiorari Granted July 14, 1995.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Susan Roth, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

PICKARD, Judge.

Defendant appeals his convictions for two counts of criminal sexual penetration (CSP) in the third degree (of R.M. and F.C.), one count of robbery (of R.M.), and one count of unlawful taking of a vehicle (of R.M.). He was acquitted of the greater offenses of kidnapping, second-degree CSP (in the commission of kidnapping), and bribery of a witness of each victim, and of robbery and unlawful taking of a vehicle of F.C. Defendant raises ten issues on appeal. Only one, that dealing with alleged error in the trial court's denial of a severance of the charges relating to each victim, merits extended discussion, and on that issue we reverse and remand for new trials. The remaining issues border on the frivolous and, even though we recognize that two of them would afford Defendant greater relief than a new trial, they will not be discussed except to say that they lack merit.

Each victim testified that Defendant accosted her while she was in her car several car lengths short of a drive-up window. R.M. had stopped at a liquor store and was checking her purse to make sure she had enough money to cover her purchases. F.C. had stopped at the Kentucky Fried Chicken menu prior to ordering. Defendant got into the car and either ordered the victim to drive away or took control of the car himself. He forced each victim to have sex. He forced R.M. to withdraw money for him at an automated teller machine. Both episodes began in the night-time and ended the following morning. After each episode when the victims escaped from Defendant's control, Defendant was left with their cars. Defendant drove R.M.'s car for a block before abandoning it. The incidents happened five days apart in the same general area in Albuquerque. Defendant testified that he was a crack dealer who sometimes exchanged sex for crack. He said that, in each instance, the victims met him on the street or in a parking lot while they were looking for drugs and voluntarily spent the evening with him, having sex and consuming drugs.

The charges were properly joined together in one indictment because they were of the same or similar character. See SCRA 1986, 5-203(A)(1) (Repl.1992) (Effective August 1, 1992). The question we address is whether the trial court abused its discretion in failing to order a severance upon Defendant's repeated motions. See SCRA 5-203(C). The granting of a severance is discretionary, and one test for abuse of discretion is whether prejudicial testimony, inadmissible in a separate trial, is admitted in a joint trial. State v. Gallegos, 109 N.M. 55, 63-64, 781 P.2d 783, 791-92 (Ct.App.), cert. denied, 108 N.M. 771, 779 P.2d 549 (1989). Thus, the question is whether the evidence of each episode would be admissible in a trial of the other.

Both the Supreme Court and this Court have had several occasions recently to address the admissibility of evidence of other bad acts under SCRA 1986, 11-404(B) (Repl.

1994). *See, e.g., State v. Williams,* 117 N.M. 551, 557–59, 874 P.2d 12, 18–20 (1994); *State v. Ruiz,* 119 N.M. 515, 518–20, 892 P.2d 962, 965–67 (Ct.App.), *cert. denied,* 119 N.M. 20, 890 P.2d 807 (1995); *State v. Rael,* 117 N.M. 539, 540–42, 873 P.2d 285, 286–88 (Ct.App. 1994); *State v. Jordan,* 116 N.M. 76, 80–81, 860 P.2d 206, 210–11 (Ct.App.), *cert. denied,* 115 N.M. 795, 858 P.2d 1274 (1993); *State v. Landers,* 115 N.M. 514, 517–20, 853 P.2d 1270, 1273–76 (Ct.App.1992), *cert. quashed,* 115 N.M. 535, 854 P.2d 362 (1993); *State v. Aguayo,* 114 N.M. 124, 128–32, 835 P.2d 840, 844–48 (Ct.App.), *cert. denied,* 113 N.M. 744, 832 P.2d 1223 (1992). Contrary to earlier cases, from which one may have gotten the impression that evidence of other bad acts would be admissible if those other acts were sufficiently similar to the act for which defendant is on trial, *e.g., State v. Corbin,* 111 N.M. 707, 711–12, 809 P.2d 57, 61–62 (Ct. App.), *cert. denied,* 111 N.M. 720, 809 P.2d 634 (1991); *State v. Burdex,* 100 N.M. 197, 203–04, 668 P.2d 313, 319–20 (Ct.App.), *cert. denied,* 100 N.M. 192, 668 P.2d 308 (1983), it is now clear that a more detailed analysis needs to be done than simply comparing superficial similarity. *Compare State v. Lamure,* 115 N.M. 61, 65–67, 846 P.2d 1070, 1074–76 (Ct.App.1992), *cert. denied,* 114 N.M. 720, 845 P.2d 814 (1993), *with id.* at 68–72, 846 P.2d at 1077–81 (Hartz, J., specially concurring), and *see Rael,* 117 N.M. at 540, 873 P.2d at 286 (approving Hartz view), and *State v. Montoya,* 116 N.M. 72, 73–75, 860 P.2d 202, 203–05 (Ct.App.) (same), *cert. denied,* 115 N.M. 709, 858 P.2d 85 (1993).

■ We outlined that analysis in *Ruiz,* and we repeat it here. First, district courts must be careful in admitting other-bad-acts evidence because of its large potential for prejudice as recognized in the first sentence of SCRA 11–404(B), which states a general rule of exclusion of such evidence. Second, district courts may admit other-bad-acts evidence, but only to show some proper purpose under SCRA 11–404(B) that is not character or propensity. Third, even if the evidence is admissible under SCRA 11–404(B), district courts may exclude it under SCRA 1986, 11–403 (Repl.1994). The first element in the analysis is not a step, but rather a frame of mind or an approach to the issue. The sec-

ond element in the analysis consists of a two-step process. The first step requires an articulation or identification of the consequential fact to which the proffered evidence of other acts is directed. *State v. Lucero,* 114 N.M. 489, 492, 840 P.2d 1255, 1258 (Ct. App.), *cert. denied,* 114 N.M. 413, 839 P.2d 623 (1992). The second step in the two-step process, if it is reached, is the SCRA 11–403 balancing. *See id.* at 492, 840 P.2d at 1258.

In considering the first step of the analysis, we have reviewed the compilation of similar cases in Timothy E. Travers, Annotation, *Admissibility, in Rape Case, of Evidence That Accused Raped or Attempted to Rape Person Other Than Prosecutrix,* 2 A.L.R.4th 330 (1980 and Supp.1994). Three conclusions are apparent from our review. First, numerically, more cases have approved the admission of this type of evidence than have disapproved its admission. Second, we cannot say that there is a definite majority and minority view. Rather, we note. that different facts sometimes warrant different results. Third, we find that those cases representing the minority of cases are generally better reasoned and contain more cogent and persuasive analysis. Judge Singleton's lead opinion and Chief Judge Bryner's dissenting opinion in *Velez v. State,* 762 P.2d 1297 (Alaska Ct. App.1988), are representative of the minority and majority of cases, respectively, and we find those opinions particularly instructive, although we recognize that some of Alaska's substantive law of sexual assault is different from New Mexico's and that some of Alaska's procedural law of evidence is different from New Mexico's.

What we find impressive about Judge Singleton's opinion is its analysis of the consequential facts for which the evidence is offered and its analysis of the way those consequential facts are proved. This analysis is consistent with the modern trend in New Mexico cases as represented by *Ruiz, Rael, Jordan, Montoya, Lucero,* and *Aguayo.*

■ Initially, we must note that, to the extent that Alaska considers its Rule 404(b) a rule of exclusion, *Velez,* 762 P.2d at 1300 n. 5, New Mexico is probably a state that considers SCRA 11–404(B) a rule of inclusion.

That is, New Mexico allows use of other bad acts for many reasons, including those not specifically listed in SCRA 11–404(B). *See Williams*, 117 N.M. at 557, 874 P.2d at 18 (quoting *Landers*, 115 N.M. at 517, 853 P.2d at 1273). For example, in both *Ruiz*, 119 N.M. at 519–20, 892 P.2d at 966–67, and *Jordan*, 116 N.M. at 80–81, 860 P.2d at 210–11, we approved the admission of other-bad-acts evidence to show the context of other admissible evidence, and in *Ruiz*, 119 N.M. at 518, 892 P.2d at 965, we approved the admission of other-bad-acts evidence to show consciousness of guilt, neither of which purposes appears in the list of proper SCRA 11–404(B) purposes. Thus, the issue in New Mexico is whether there is a probative use of the evidence that is not based on the proposition that a bad person is more likely to commit a crime.

■ Notwithstanding this difference in the breadth of purposes for which other bad acts would be admissible, the Alaska opinions provide substantial guidance in the proper method of analysis to use for determining whether the evidence does in fact prove what it is offered to prove in a permissible way. In both New Mexico and Alaska, evidence is inadmissible when offered solely to show propensity. *Ruiz*, 119 N.M. at 519, 892 P.2d at 966; *Velez*, 762 P.2d at 1300.

Judge Singleton's opinion reviewed several of the various exceptions to Rule 404(b)'s general principle of exclusion of other-bad-acts evidence in addressing an issue similar to the one we address today, i.e., whether evidence of a similar sexual assault on one woman would be admissible in the trial of another sexual assault on a different woman committed several days or weeks later. Judge Singleton concluded that modus operandi to show identity was unavailable as an exception because there, as here, the defendant admitted having sexual relations with the women, and hence identity was not at issue. *See State v. Beachum*, 96 N.M. 566, 568, 632 P.2d 1204, 1206 (Ct.App.1981) (consequential fact for which evidence is offered must be at issue); *State v. Allen*, 91 N.M. 759, 760, 581 P.2d 22, 23 (Ct.App.) (evidence of collateral offense may be admitted if relevant to a material element of the crime

charged which is in issue and upon which there is doubt), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978). He next concluded that the exception for lewd and lascivious disposition to show motive was unavailable because that exception is generally available in Alaska, as in New Mexico, only for other acts upon the same person. *See Williams*, 117 N.M. at 558–59, 874 P.2d at 19–20.

■ Finally, Judge Singleton concluded that the other-bad-acts evidence would be inadmissible to show intent or mental state. It is this portion of the opinion that we believe to be most relevant to our analysis here, although we recognize that some of the reasoning is unique to Alaska's sexual assault laws. Two considerations, however, are important, and they are mirror images of one another. First, evidence of other bad acts should not be admissible to prove intent or mental state when all the acts show is propensity. Second, evidence of other bad acts might be admissible if a specific type of intent were at issue and the other bad acts bore on that intent in a way that did not merely show propensity.

An example of the latter situation would be if the defendant were accused of assault with intent to commit CSP and evidence of other sexual assaults were offered to establish the defendant's intent when grabbing the victim. *See Velez*, 762 P.2d at 1305. Another example, albeit in the context of a different crime, would be if the defendant were accused of reckless driving due to driving while intoxicated and evidence of past occasions of defendant's driving while intoxicated were offered to establish the defendant's knowledge of the risk he or she poses to others while driving in that state. *See id.* at 1304 n. 11.

■ In this case, had Defendant's defense to the later (F.C.) incident been mistake of fact, or that he thought F.C. was voluntarily exchanging sex for drugs even though she was perhaps not, evidence of the former (R.M.) incident might have been admissible to show Defendant's knowledge or intent. *See id.* at 1304 (evidence of other women obtaining restraining orders on defendant after what he claimed were consensual episodes might be properly relevant to defen-

dant's knowledge of the risk that his dating behavior might not be consensual); *cf. State v. McCallum,* 87 N.M. 459, 461, 535 P.2d 1085, 1087 (Ct.App.) (evidence of other instances where defendant agreed to remodel homes and never finished the job was admissible in fraud trial to show he was aware of risks of remodeling business or of his capabilities and proceeded with fraudulent intent when he kept entering into more and more contracts that he never finished), *cert. denied,* 87 N.M. 457, 535 P.2d 1083 (1975). However, none of the above rationales is relevant to this case because Defendant's defense here was simply that his version of the consensual nature of the entire evenings should have been believed over the testimony of either R.M. or F.C. Under this state of facts, according to the reasoning of Judge Singleton that we find persuasive, the only use for the evidence of the other incident was to show character or propensity, a purpose that is prohibited under SCRA 11–404(B).

In contrasting the opinion of Judge Singleton with the dissenting opinion of Chief Judge Bryner, we find the lead opinion more persuasive. Chief Judge Bryner relied on the abundant case law from other jurisdictions that admits evidence of other sexual assaults to show intent when the episodes are similar factually. *Velez,* 762 P.2d at 1311. However, Chief Judge Bryner never explained why evidence of one sexual assault shows a defendant's intent at a different time, except through the prohibited use of other bad acts to show propensity. This same lack of a cogent explanation is present in some of our own cases—*e.g., Corbin, Burdex,* and the majority opinion in *Lamure*—opinions which, as we have said, appear not to be followed by the more modern cases of *Ruiz, Rael,* and *Montoya.*

In the present case, the victims testified to one version of the events, and Defendant testified to another. Without recounting the exact testimony and its impeachment, it will suffice to say that both the victims appeared to remain with Defendant voluntarily for at least part of the time they were with him, a situation that the jury might find out of the ordinary. Similarly, Defendant provided the jury with versions of the evidence related to his trading of drugs for sex that would also likely be outside the jurors' common experiences unless they were familiar with the drug subculture. Thus, the jury was presented with a stark and substantial credibility issue to resolve in a case that did not involve situations that were, in context, so unusual that their mere repetition would cast doubt on the credulity of a defendant's explanation. As indicated by the above discussion, there is not an available SCRA 11–404(B) exception, whether specifically listed or not, into which to fit the evidence of the other crime. Although the State argues that the other crime would be admissible to show "common scheme" and to rebut the claim of consent, the way the evidence accomplishes this is through the prohibited method of proving propensity. *Lamure,* 115 N.M. at 68–73, 846 P.2d at 1079–82 (Hartz, J., specially concurring).

Moreover, the cases on which the State relies have either been discredited or are distinguishable. *Corbin* has been discredited. *State v. Hernandez,* 104 N.M. 268, 273, 720 P.2d 303, 308 (Ct.App.), *cert. denied,* 104 N.M. 201, 718 P.2d 1349 (1986), is distinguishable. *Hernandez* involved drug crimes, and the more a defendant has been involved with drugs, the more naturally a jury may infer defendant's expertise in identifying drugs and therefore knowledge that what he or she was dealing with are unlawful drugs. *Id.* In such cases, the other-crimes evidence logically proves knowledge in a way that is not mere propensity in a similar fashion to the way fraud was proved in *McCallum. State v. Gammill,* 102 N.M. 652, 655, 699 P.2d 125, 128 (Ct.App.), *cert. denied* (N.M. March 5, 1985), is also distinguishable because our opinion in that case turned more on lack of preservation of the issue than on anything else.

■ In this case, there is no question but that Defendant adequately preserved the issue. He moved for a severance twice before trial. The trial court's ruling prior to trial may have been within its discretion, *see Ruiz,* 119 N.M. at 518, 892 P.2d at 965 (issues of joinder and severance are reviewed based on the showing to the trial court at the time trial court ruled), but that was not the

end of the matter. We explain. Prior to trial, the trial court had only the police reports as the factual basis for the charges and did not know what Defendant's defense was to be. While we do not wish to be misunderstood as saying that the police reports established the type of unique modus operandi that would qualify for admission as "defendant's signature" under *Williams*, 117 N.M. at 558, 874 P.2d at 19, at least at the time the trial court made its pretrial rulings, the modus operandi did appear unusual and the identity of the perpetrator was very much in issue. However, Defendant renewed his motion during his case, at which time it was clear that identity was no longer in issue and there were substantial differences between the two incidents. At this time, the trial court ruled "we're past the point of no return." This was error. It was entirely proper for Defendant to renew his severance motion when the grounds for it became more apparent and compelling. *See State v. Garcia*, 84 N.M. 519, 521, 505 P.2d 862, 864 (Ct.App.), *cert. denied*, 84 N.M. 512, 505 P.2d 855 (1972). Indeed, we have faulted defendants and rejected severance issues on the very ground that pretrial motions at which the showing of prejudice was speculative were not renewed during or after trial, at which time the showing of prejudice was more concrete. *See State v. McGill*, 89 N.M. 631, 632, 556 P.2d 39, 40 (Ct.App.1976). Thus, at least at the point of the renewed motion in this case, the trial court should have granted Defendant's motion to sever.

▮▮▮ Finally, the State argues that evidence of prejudice is lacking because the jury acquitted Defendant of many charges, thus demonstrating that it was able to carefully review the evidence. A similar argument was made and rejected in *Gallegos*, 109 N.M. at 64, 781 P.2d at 792, another case in which we held that the evidence of the other crimes

was inadmissible under SCRA 11–404(B). Although the precise distinction does not appear to have been clearly made in our prior cases, we draw this distinction here: the State's argument might be viable in a case dealing solely with SCRA 11–403 or a case in which other factors might be present, but it is not meritorious in a case in which the SCRA 11–404(B) issue is properly preserved and in which the trial court erred by admitting the evidence under SCRA 11–404(B). When there is error in admitting the other-crimes evidence under SCRA 11–404(B), prejudice is established when there are convictions. In such a case, we will not speculate that the erroneous admission of other crimes did not cause a compromise verdict of guilty of some charges and not guilty of others. *See State v. Boscarino*, 204 Conn. 714, 529 A.2d 1260, 1265 (1987). A different situation is presented, however, when the evidence is admissible under SCRA 11–404(B), and the question is whether it should have been excluded on balance under SCRA 11–403. In that situation, the presence of some acquittals does logically show that the other-bad-acts evidence was not so overwhelmingly prejudicial as to completely contaminate the jury, as defendants often argue. *See McGill*, 89 N.M. at 632, 556 P.2d at 40.

Defendant's convictions are reversed and remanded for new trials.

IT IS SO ORDERED.

ALARID and WECHSLER, JJ., concur.