This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                      **NO. 29,505**

**OCTAVIANO THOMAS CLARK,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

Defendant Octaviano Clark appeals his convictions for criminal sexual contact of a minor in the second degree (CSCM second degree) and criminal sexual contact of a minor in the third degree (CSCM third degree). On appeal, Defendant argues that (1) there was insufficient evidence supporting his convictions, (2) the district court erred by allowing improper character evidence that Defendant supplied cocaine to attendees of a party, (3) the State committed prosecutorial misconduct by putting forth improper character evidence in closing, (4) he was denied due process when his motion for alibi was ignored instead of being treated as a motion for a new trial, and (5) he did not receive effective assistance of counsel. We hold that sufficient evidence supports Defendant's convictions. However, because the district court erred in allowing character evidence that Defendant supplied cocaine to the attendees of a party, we reverse and remand for a new trial. As a result, we do not reach the last three issues.

**BACKGROUND**

Defendant's convictions arose out of an incident that occurred during a party in late 2005. The victim was twelve years old at the time. The party occurred at the home of the victim's cousin Claudia Avila (Claudia). Defendant, who was Claudia's boyfriend, was present at the party. Victim's cousin Victor Avila (Victor), Victor's wife, victim's mother Sonia Avila (Sonia), victim's stepfather Ernesto Rodriguez

2

(Ernesto), victim's brother Noe Avila (Noe), victim's stepsister Erica Avila (Erica), victim's minor sister (J.), and Claudia's three minor daughters were also present at the party. Additionally, Erica testified that a heavyset, tall man with a mustache was also present for two hours but left before midnight.

The jury heard testimony that most of the adults were drinking alcohol and using cocaine at the party, including Defendant, Erica, and Sonia. Before trial, Defense counsel asked the district court to not allow testimony that Defendant supplied the cocaine to the party, arguing that such testimony was prejudicial and not relevant to the offense. Initially, the district court agreed and stated "there should be no reference made to who brought the cocaine to the party." However, the district court ultimately decided to allow testimony that Defendant supplied the cocaine, as long as the testimony did not paint Defendant "as a major cocaine dealer," noting that what the adults at the party were "under the influence of [is] a fact that relates to the case." Over a trial objection, Erica testified that Defendant "was the one that gave [her] cocaine" at the party.

The victim testified that she, J., and Claudia's three daughters spent most of the night in one of the two bedrooms in the home. Claudia's daughters slept together on the top bunk of a bunk bed, and the victim and J. slept on the bottom bunk. The victim went to sleep around 2:00 a.m. She awoke to "a really cold hand touching [her]

body." She testified that as she woke up she felt a "hand in my vagina," beneath her pants and underwear and that she pushed it away. After she pushed the hand away from her vagina, the hand moved up and grabbed and rubbed the victim's breasts, under her shirt but over her bra. She again pushed the perpetrator away, and the perpetrator "stepped back" and told the victim "[d]on't tell anybody." After the victim told him to "[g]et out," the perpetrator left the bedroom.

The victim identified the perpetrator as Defendant by name and during an in-court identification. While the victim never saw the perpetrator's face, she identified him as Defendant based on "his baseball cap and his long-sleeved blue shirt" that she remembered him wearing the night of the party. Further, she identified Defendant because the perpetrator was "skinny," and the males she remembered who attended the party were bigger than Defendant. When asked if there was anything else she could recall that identified Defendant, the victim testified that his voice also aided the identification and that Defendant did not sound like the other two males she knew at the party.

According to the victim, after Defendant left the room, the victim called Erica to the bedroom and told her what had happened. Erica told the victim to wait inside the bedroom and returned with Sonia. The victim then told Sonia what had happened. The victim, Sonia, Erica, Ernesto, Noe and J. left and went to the victim's house. Erica

4

testified that no one reported the incident that night because of the cocaine use at the party, and she did not report it the next day because she went home to El Paso. According to Sonia, the victim only told Erica about what happened that night, that she did not find out until two days later, and that she did not report the incident to the police.

In May 2007, the victim stayed at her cousin's girlfriend Laura Astorga's (Laura) house. The victim became ill and called Sonia because she wanted to go home. During the phone call, the victim became upset upon discovering that Defendant was at the victim's home with J. The victim told Laura what had previously happened with Defendant at the party in 2005. Laura contacted a local hospital on May 27, 2007, which in turn contacted the police.

After interviewing the victim, Detective Irma Palos interviewed Defendant. Defendant voluntarily waived his *Miranda* rights and agreed to talk with Detective Palos. He denied the victim's allegations as to touching her breast and vagina at the party in 2005. Defendant admitted entering the bedroom where the children were sleeping to "cover his children," but stated that nothing inappropriate happened.

Defendant was charged with and convicted of CSCM second degree and CSCM third degree. This appeal timely followed.

**SUFFICIENCY OF THE EVIDENCE**

Defendant argues that the evidence was insufficient to support his convictions for criminal sexual contact with a minor. In order to convict Defendant of CSCM second degree, the State had to prove beyond a reasonable doubt that (1) Defendant touched or applied force to the unclothed vagina of the victim, and (2) the victim was twelve years of age or younger. In order to convict Defendant of CSCM third degree, the State had to prove beyond a reasonable doubt that (1) Defendant touched or applied force to the clothed breast of the victim, and (2) the victim was twelve years of age or younger. In particular, Defendant argues that the evidence was insufficient as to the second element of each count because there was no physical evidence that anyone touched or applied force to the victim's vagina or breast. Additionally, Defendant argues that the evidence was insufficient as to whether the perpetrator was Defendant, because the victim identified Defendant without seeing his face, and no one saw Defendant enter the bedroom.

"The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198 (internal quotation marks and citation omitted). "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Baca*,

1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776 (internal quotation marks and citation omitted). We view the evidence in the light most favorable to, and indulge all inferences in favor of, the verdict. *Sena*, 2008-NMSC-053, ¶ 10; *State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). If there is sufficient evidence supporting the verdict, we do not reweigh the evidence or substitute our judgment for that of the factfinder. *State v. Fuentes*, 2010-NMCA-027, ¶ 13, 147 N.M. 761, 228 P.3d 1181.

Regarding Defendant's first argument, that the evidence was insufficient as to whether the victim was touched because there was no physical evidence, New Mexico appellate cases have never required physical evidence in a prosecution for criminal sexual contact or penetration. In *State v. Nichols*, 2006-NMCA-017, ¶¶ 10-11, 139 N.M. 72, 128 P.3d 500, this Court recognized, in a prosecution for criminal sexual penetration of a minor, that the victim's uncorroborated testimony, even when impeached to some degree, was sufficient evidence to support a conviction. Thus, even without physical evidence or other corroboration, the victim's testimony was sufficient for a jury to conclude that someone touched or applied force to the victim's unclothed vagina and clothed breast. *See id.* It was exclusively the province of the jury to weigh the evidence and determine the credibility of the victim's testimony in its role as factfinder. *See id.* ¶ 11.

Defendant also argues that the State presented insufficient evidence as to Defendant's identity as the person who touched the victim because the victim testified that she did not see the perpetrator's face. However, the victim's testimony regarding Defendant's characteristics and identity as the perpetrator was sufficient to support the jury's conclusion that it was Defendant who touched the victim. As noted, the victim testified that Defendant had a slender build compared to the other males at the party and that the perpetrator was skinny. The victim also identified Defendant as the perpetrator based on the clothing that he was wearing the night of the incident and his voice, and Erica corroborated the victim's testimony as to Defendant's clothing. Further, although he denied touching the victim, Defendant admitted to Detective Palos that he entered the bedroom where the victim and the other minors were sleeping to cover his stepdaughters. This evidence, viewed in the light most favorable to the verdict, was sufficient for a reasonable mind to conclude that it was Defendant who touched the victim. *See Sena*, 2008-NMSC-053, ¶ 10; *Baca*, 1997-NMSC-059, ¶ 14.

**CHARACTER EVIDENCE**

Defendant next argues that the district court erred in allowing improper character evidence that Defendant supplied cocaine to the attendees of the party. We review the admission of evidence under an abuse of discretion standard. *State v.*

*Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

Character evidence of the accused is governed by Rule 11-404(B) NMRA, which provides that:

> [e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Rule 404(B) therefore "prohibits the use of otherwise relevant evidence when its sole purpose or effect is to prove criminal propensity" and allows evidence of other acts when they are relevant to a non-character purpose. *State v. Gallegos*, 2007-NMSC-007, ¶ 22, 141 N.M. 185, 152 P.3d 828. In order for a district court to properly admit evidence of other acts for a non-character purpose, (1) the proponent must "identify and articulate the consequential fact to which the evidence is directed," and (2) "even if other-acts evidence is relevant to something besides propensity, such evidence will not be admitted if the probative value related to its permissible purpose is substantially outweighed" by unfair prejudice. *Id.*

9

As to the first requirement, the district court determined that the testimony about Defendant supplying the cocaine was part of the "res gestae" and relevant "to know what went on." However, this Court has rejected an identical argument in a case with similar facts. *See State v. Rael*, 117 N.M. 539, 873 P.2d 285 (Ct. App. 1994). In *Rael*, this Court held that the district court abused its discretion in allowing testimony that the defendant was a "known cocaine dealer." *Id.* at 540, 873 P.2d at 286. The defendant was charged with being a felon in possession of a firearm after police executed a search warrant and found a firearm at his home. *Id.* at 539, 873 P.2d at 285. At trial, the state presented testimony that the defendant was a known cocaine dealer and in closing argument argued that "[d]rug dealers use weapons to defend themselves" and that "[k]eeping a gun is consistent with being a drug dealer." *Id.* at 540, 873 P.2d at 286. This Court overturned the defendant's conviction, rejecting the state's rationale that the references to the defendant as a drug dealer were "part of the res gestae or complete story" and instead held that they were an attempt to "convince the jury [that the d]efendant was a known drug dealer so, ipso facto, the shotgun must belong to him." *Id.* at 542, 873 P.2d at 288 (internal quotation marks and citation omitted). In this case, to the extent that the State argues that the testimony that Defendant supplied the cocaine was necessary "to know what went on" or was part of the "res gestae," *Rael* is controlling and the district court abused its discretion in

allowing the testimony.

Additionally, the State argues that the testimony that Defendant supplied the cocaine at the party was relevant for two other non-character reasons: (1) "it explained the atmosphere of the party in which the adults were using drugs and alcohol and may not have been as discerning as if they were sober," and (2) "it explained[,] in part[,] why Erica and Sonia did not follow up with the police regarding the victim's allegations." We agree that whether Defendant and the party's attendees consumed cocaine and alcohol during the party was relevant. The cocaine and alcohol use was relevant as to why Erica and Sonia did not report the incident to police and was a fact for the jury to consider in applying weight to the witnesses' testimony as to their memory of the party. However, the cocaine and alcohol use is distinct from the identity of the supplier of the cocaine. Whether Defendant or someone else supplied the cocaine does not further explain the atmosphere at the party or explain why the incident went unreported. The State therefore did not meet its burden of identifying and articulating a "consequential fact" apart from propensity for the testimony that Defendant supplied cocaine to the party.

Further, even if the State had met its burden of establishing a consequential fact apart from propensity for Defendant supplying the cocaine to the party, the unfair prejudice substantially outweighs its probative value. This Court has previously

11

determined that "[t]he danger of unfair prejudice from admission of the drug-related evidence [is] great." *Rael*, 117 N.M. at 543, 873 P.2d at 289 (internal quotation marks and citation omitted). The unfair prejudice was especially high in this case, as the State argued in closing that Defendant was of questionable character and supplying cocaine to the party illustrated his character. During rebuttal closing, the State told the jury: "They'd been partying, doing cocaine. Not just drinking alcohol, but doing cocaine that . . . [D]efendant gave them. What does that tell you about him?" As discussed, the probative value that Defendant supplied cocaine was low. As a result, the district court abused its discretion in allowing the testimony. *See Gallegos*, 2007-NMSC-007, ¶ 22.

Although the district court erred in admitting the testimony that Defendant supplied the cocaine, we will not reverse Defendant's convictions if the evidentiary error was harmless. *See State v. Barr*, 2009-NMSC-024, ¶ 53, 146 N.M. 301, 210 P.3d 198. "[A] non-constitutional error is harmless when there is no reasonable probability the error affected the verdict." *Id.* (emphasis omitted). We consider three factors when determining whether error is harmless: whether (1) substantial evidence supports the defendant's convictions without reference to the improper evidence, (2) there is such a disproportionate volume of permissible evidence that the improper evidence will appear minuscule in comparison, and (3) there is substantial conflicting

evidence to discredit the state's testimony. *Id.* ¶ 56.

We must first determine whether substantial evidence supports Defendant's convictions without reference to Defendant supplying the cocaine to the party. *See id.* As we previously determined in our sufficiency of the evidence analysis, substantial evidence supported Defendant's convictions without reference to Defendant supplying the cocaine to the party. Therefore, the first factor weighs in favor of the error being harmless.

We next determine whether the volume of evidence relating to Defendant supplying the cocaine to the party was so disproportionately small in comparison to the permissible evidence that it appears minuscule by comparison. *See id.* The State argues that the testimony that Defendant supplied cocaine to the party was simply a passing reference "brought up by one question" from the State and answered with "a simple and unadorned 'yes.'" While that may accurately describe the testimony regarding Defendant supplying the cocaine to the party, the State further used the testimony in rebuttal closing. During rebuttal closing, the State told the jury: "They'd been partying, doing cocaine. Not just drinking alcohol, but doing cocaine that . . . [D]efendant gave them. What does that tell you about him?" Thus, not only did the State use the improper evidence in closing, the State used it to essentially argue that, because Defendant supplied cocaine, he was of questionable character. This type of

argument is precisely what Rule 11-404(B) was designed to protect against. *See State v. Ruiz*, 2001-NMCA-097, ¶ 13, 131 N.M. 241, 34 P.3d 630 ("One cannot ignore the long tradition of courts and commentators expressing fear that jurors are too likely to give undue weight to evidence of a defendant's prior misconduct and perhaps even to convict the defendant solely because of a belief that the defendant is a bad person." (internal quotation marks and citation omitted)). Additionally, the jury apparently considered who brought the cocaine to the party. After Erica testified, a juror submitted a question to the district court inquiring "How/who provided drugs? Were they brought in?" The district judge responded to the question by answering that the "previous witness asked and answered." Therefore, even though the State did not present extensive testimony that Defendant supplied the cocaine, the volume of impermissible evidence was high considering that the State used it to argue that Defendant had questionable character and the issue was clearly noted by the jury.

The third factor is whether there is "substantial evidence that discredited the State's case." *State v. Branch*, 2010-NMSC-042, ¶ 16, 148 N.M. 601, 241 P.3d 602. As we addressed in the sufficiency of the evidence analysis, the State's case was not strong. There was no physical evidence, the incident went unreported for almost a year and one-half, and the victim identified Defendant as the perpetrator based on clothing, voice, and build and testified that she did not see his face. Additionally,

14

there were no eyewitnesses to Defendant entering the bedroom and uncertainty as to who attended the party. Further, the State's witnesses who were at the party admitted to drinking alcohol and using cocaine at the party. There was therefore substantial evidence that discredited the State's case and the third factor weighs against harmless error.

Considering that the volume of the impermissible evidence is not minuscule and the weakness of the State's case, there was a reasonable probability that the admission of evidence that Defendant supplied the cocaine to the attendees of the party affected the verdict. *See Barr*, 2009-NMSC-024, ¶ 53. The admission of the evidence was therefore not harmless error. *See id.* As a result, we reverse Defendant's convictions and remand for a new trial. *See State v. Elinski*, 1997-NMCA-117, ¶ 27, 124 N.M. 261, 948 P.2d 1209.

**CONCLUSION**

Because the district court erred in allowing testimony under Rule 11-404(B) that Defendant supplied cocaine to the party and the error was not harmless, we reverse Defendant's convictions and remand for a new trial. We therefore do not reach Defendant's remaining issues.

**IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge.**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**TIMOTHY L. GARCIA, Judge**